638 A.2d 107

**STATE of Maryland**

v.

**Kevin BELL a/k/a Kevin Rich.**

**No. 79, Sept. Term, 1993.**

Court of Appeals of Maryland.

March 15, 1994.

Tarra DeShields–Minnis, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for petitioner.

Sherrie B. Glasser, Asst. Public Defender, (Stephen E. Harris, Public Defender, both on brief) Baltimore, for respondent.

Before MURPHY, C.J., and RODOWSKY, CHASANOW, KARWACKI, ROBERT M. BELL, RAKER and CHARLES E. ORTH, Jr., (retired, specially assigned), JJ.

KARWACKI, Judge.

Kevin Bell, a/k/a Kevin Rich[1], was convicted by a jury in the Circuit Court for Baltimore City of one count of possession with intent to distribute cocaine, and one count of simple possession of cocaine. Prior to his trial, Bell moved to suppress 119 vials of cocaine, arguing that the cocaine was the fruit of an unlawful search of an automobile. The State countered that the automobile was lawfully searched pursuant to the inventory exception to the warrant requirement of the Fourth Amendment to the United States Constitution and Article 26 of the Maryland Declaration of Rights.[2] Bell's motion was denied, and the cocaine was admitted as evidence. On appeal, the Court of Special Appeals reversed his convic-

---

1. The respondent maintains that his correct name is "Kevin Rich," and he was referred to as such during the suppression hearing. Before the Court of Special Appeals, the caption of the case referred to "Kevin Bell a/k/a Kevin Rich," and the intermediate appellate court's opinion refers to him as "Kevin Bell." For the sake of clarity, we too will refer to the respondent as "Kevin Bell."

2. We have interpreted Art. 26 of the Maryland Declaration of Rights as being *in pari materia* with the Fourth Amendment to the United States Constitution. *Livingston v. State*, 317 Md. 408, 410, 564 A.2d 414, 415–16 (1989); *Gahan v. State*, 290 Md. 310, 319–20, 430 A.2d 49, 54 (1981).

tion, holding that the search was not a valid inventory and declining to address an argument, advanced for the first time on appeal, that the search was lawful under the automobile exception to the warrant requirement announced in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *Bell v. State*, 96 Md.App. 46, 55, 623 A.2d 690, 694 (1993). We granted the State's petition for certiorari to review whether the Court of Special Appeals was required to consider the State's argument based upon the *Carroll* doctrine when the argument was not raised in the trial court. Under the circumstances of the instant case, we shall affirm the Court of Special Appeals.

I

The facts of the case are set forth in the opinion of the Court of Special Appeals:

"At approximately 5:30 P.M. on May 15, 1991, Officers Mark Daugherty, William Brown, and Attlay Williams were driving an unmarked car in the vicinity of Woodland and Homer Avenues in Baltimore City. The officers described the neighborhood as a high crime area generally and an area known for heavy narcotics activity specifically. The officers observed a group of four or five young men, the appellant among them, 'scatter' at the approach of the three strangers. The appellant walked away from the rest of the group and approached the passenger door of a 'red Chevy Geo.' According to Officer Daugherty, the appellant made 'a hand movement as [if he were] placing something in the vehicle.' He then shut the car door and dropped a plastic bag next to the car.

The officers did not immediately move in on the appellant or any of the other members of the group. They continued to patrol the general area and, approximately ten minutes later, returned to the intersection of Woodland and Homer Avenues. Upon their return, the appellant was standing next to the open passenger door of the red Chevy Geo. At the approach of the 'strangers,' he closed the door and dropped what appeared to be 'a vial, a white object' into the three-inch window opening. At that point, the three officers

got out of their automobile and placed the appellant under arrest. A search of his person revealed a 'black diamond watch' and a beeper.

The police testimony itself revealed that their focus on the automobile was investigative in nature from the very outset. Immediately after arresting the appellant, the officers asked him to consent to the search of the car. According to their testimony, he refused and told them that they would have to obtain a search warrant if they desired to look into the car. Even in the face of that denial of consent, the police interest in the car did not abate.

Officer Brown walked over to the car and observed a vial of white powder lying in open view on the floor of the front passenger seat. A supervising officer, Sergeant Cappucino, arrived on the scene and conferred with the officers. Ostensibly under the authority of the *Carroll* Doctrine, the police warrantlessly opened the door of the automobile and retrieved the vial of white powder that had been spotted on the floor. That apparently ended the *Carroll* Doctrine probe into the automobile.

Officer Brown continued his testimonial narrative: 'Once we did that, we called for a wagon and began an inventory of the vehicle since we were going to tow it.' Between the passenger seat and the driver's seat, Officer Brown found a 'Fila'[3] bag. Inside the Fila bag were several baggies. The first contained five bundles containing ten vials each. A second contained 'bundles of ten each wrapped in a rubber band.' A third baggie contained 'three bundles of ten each and one bundle with nine vials.' Officer Brown testified that the substance in the various containers had been 'packaged for street distribution.' Chemical analysis revealed the substance to be cocaine.''

*Bell v. State*, 96 Md.App. at 51–53, 623 A.2d at 692–93.

The transcript of the suppression hearing reveals that the State crafted its argument in terms of two separate, distinct

---

**3.** "Fila," used to describe the bag, is the trade name of a brand of sportswear which was printed on the outside of the opaque container.

searches. The propriety of the first search, that which consisted of opening the door of the automobile and retrieving the vial of cocaine spotted on the floorboard, is not at issue. The Court of Special Appeals had no difficulty in upholding the seizure of the single vial of cocaine, finding that the automobile exception to the warrant requirement (i.e., the *Carroll* doctrine) legitimated that search. *Id.* 96 Md.App. at 54, 623 A.2d at 693. It is the second search, which encompassed the entire car and revealed the Fila bag and its contents, that is the subject of contention.

At the suppression hearing, the State argued that the second search was an inventory search, requiring neither a warrant nor probable cause. *See South Dakota v. Opperman*, 428 U.S. 364, 370–74, 96 S.Ct. 3092, 3097–99, 49 L.Ed.2d 1000, 1005–08 (1976); *Duncan and Smith v. State*, 281 Md. 247, 256–59, 378 A.2d 1108, 1114–16 (1977). The circuit court agreed that, although "the inventory, as related by the officers, leaves something to be desired, nevertheless, the inventory was enough to get them into the Fila bag." In its brief before the Court of Special Appeals, the State modified its initial argument, adding an alternative argument in support of the legality of the search. There, the State contended that the warrantless search of the entire car was permissible not only under the inventory exception, but also under the *Carroll* doctrine's automobile exigency exception to the warrant requirement.

When it reviewed the facts, the intermediate appellate court disagreed with the circuit court's conclusion as to the validity of the inventory search, holding that the second search of the car was not a *bona fide* inventory search, but was instead " 'a case more of investigative opportunism than of genuine solicitude for personal property.' " *Bell v. State*, 96 Md.App. at 59, 623 A.2d at 696 (quoting *Dixon v. State*, 23 Md.App. 19, 38, 327 A.2d 516, 527 (1974)). The Court of Special Appeals also declined to extend the *Carroll* doctrine beyond the first search, finding that once the single vial had been seized, the first search was complete, and the *Carroll* doctrine permitted no further "gratuitous rummaging about." *Bell*, 96 Md.App.

at 54, 623 A.2d at 694. Judge Moylan, speaking for the court, then stated:

> "Although an argument might someday be made for extending a search such as this based upon some almost Newtonian proposition that the discovery of *some* contraband suggests the likely presence of *more* contraband yet to be discovered, it is enough to note that no such argument was made by the State in this case, either at the suppression hearing or before us."

*Id.* at 55, 623 A.2d at 694. Before this Court, the State makes this very argument, stating that "[w]here there is smoke, there is bound to be fire." It does not challenge the intermediate appellate court's rejection of the inventory search justification, but instead it treats the search of the car and the Fila bag as a continuation of the initial search and argues that it is clearly permitted under the *Carroll* doctrine. In this regard, the State argues that the Court of Special Appeals erred in failing to address that argument as it pertains to the second search. Because we find that the intermediate court did not err, either in limiting the scope of the initial search for the single vial or in declining to consider the State's *Carroll* doctrine argument as it pertains to the search and seizure of the Fila bag and its contents, we need not address the validity of the second search.

## II

The State argues that by limiting the scope of the permissible *Carroll* doctrine search to the single vial only, the Court of Special Appeals misinterpreted the scope of the *Carroll* doctrine. Had the State initially argued in the trial court that the police had probable cause for more than one vial, or that the officers' actions constituted one extended search for an undetermined quantity of narcotics, this argument would perhaps stand on stronger ground. It was the State, however, which initially framed its case in terms of two separate searches and argued probable cause for the first search only. The trial court and the intermediate appellate court merely accepted the State's presentation of the case, and we will do the same.

■ Given the fact that the two searches were distinct, the Court of Special Appeals was entirely correct in determining that the first search was complete upon the seizure of the single vial. The intermediate appellate court reasoned:

"What followed that limited seizure [of the single vial] was beyond the permitted scope of this particular 'automobile exception' entry. The permitted scope of a *Carroll* doctrine search, of course, is whatever is necessary to serve the purpose of *that* particular search. The only probable cause asserted by the police was probable cause to believe that the single vial observed lying on the floor in front of the passenger seat contained contraband narcotics. Accordingly, the automobile was warrantlessly entered and that vial was retrieved. At that point, the entire purpose that justified the warrantless entry in the first place had been fulfilled. The police obligation, therefore, was to terminate the search, its purpose already having been fully served. The *Carroll* doctrine does not permit further and gratuitous rummaging about. As was explained in R. Gilbert & C. Moylan, *Criminal Law: Practice and Procedure* 333 (1983):

'If there is probable cause to believe that an automobile contains stolen truck tires (coupled with the attendant exigency), then the police may stop the automobile in question and search it warrantlessly under the *Carroll* doctrine. Once they have found the stolen truck tires, however, it is incumbent upon them to terminate—to get out. Any further search would be exploratory in nature and would be more than was necessary to serve the purpose that triggered the initial entry into the automobile.' "

*Bell,* 96 Md.App. at 54–55, 623 A.2d at 694. Certainly, had the search for the single vial been a warrant search, the scope would have been clearly limited. *See Horton v. California,* 496 U.S. 128, 141, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112, 126 (1990) ("if the ... items named in the warrant had been found at the outset ... no [further] search ... could have taken place"); 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 4.10(d), at 329 (2d ed. 1987,

Supp.1994) ("When the purposes of the warrant have been carried out, the authority to search is at an end"). This same standard is applicable to warrantless searches conducted under the *Carroll* exception to the warrant requirement. The Supreme Court recently encountered a situation similar to that before us in which the police had probable cause to believe that a paper bag in an automobile's trunk contained contraband. The Court limited the scope of the warrantless search permissible under the automobile exception, stating:

> "Th[e] probable cause [to believe the bag contained marijuana] now allows a warrantless search of the paper bag. The facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment."

*California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991). *See also United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982) ("the scope of a warrantless search of an automobile ... is defined by the object of the search and the places in which there is probable cause to believe that it may be found"); *State v. James,* 87 Md.App. 39, 47, 589 A.2d 81, 85 (1991) ("The [warrantless automobile] search, if based on probable cause, is permitted to be as extensive as if the search was based on a warrant particularizing the object of the search"). As the Court of Special Appeals noted in the instant case, the only probable cause asserted by police was probable cause to believe that the single vial observed on the floor of the car contained contraband narcotics. Thus, we can find no error in that court's limitation of the first *Carroll* doctrine search to the seizure of the single vial.

### III

The State argues that the intermediate appellate court, in limiting the scope of the first search, "suggests that before the police could conduct a further search of the car and its contents, some further incremental justification in the form of

'probable cause plus' was needed." We do not find any basis for this interpretation in the opinion of the Court of Special Appeals. Far from suggesting that some heightened level of probable cause is required, the intermediate appellate court simply declined to address the question of what probable cause, if any, existed for the second search, because that argument was not made to the trial court.

The State concedes that it did not argue the applicability of the *Carroll* doctrine at the suppression hearing, but it deems this fact irrelevant in light of an appellate court's discretion to affirm a decision of a trial court on grounds that had not been relied upon by either the trial court or the parties. In support of its argument, the State cites *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), in which we stated:

> "It is true of course, as a general principle, that an appellate court will not ordinarily consider an issue that has not previously been raised.... However, there are well-recognized exceptions to this general principle. One exception is that where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, an appellate court will affirm. In other words, a trial court's decision may be correct although for a different reason than relied on by that court."

*Id.* at 502, 403 A.2d at 1223 (citations omitted). The State appears to have misconstrued our holding. *Robeson* is couched in discretionary language, e.g., "this Court will not *ordinarily* consider an issue which was not raised in the petition," *id.* (emphasis added); and "an appellate court will *normally* affirm a trial court on a ground adequately shown by the record." *Id.* at 503, 403 A.2d at 1224 (emphasis added). The use of the terms "ordinarily" and "normally" imply that exceptions to these rules exist. Clearly, *Robeson* stands not for the proposition that an appellate court *must* examine new, alternative grounds for upholding a trial court's decision, but only for the proposition that it may do so if it deems such

review appropriate.[4] Moreover, the language of *Robeson* refers to an alternative ground "adequately supported by the record." *Id.* If a party's presentation of his or her case was prejudiced by an opponent's failure to raise an issue at the trial stage (i.e., the party did not adduce the requisite evidence), then the record is necessarily lacking and will not be "adequate" to support the alternative ground raised on appeal.

■ The scope of appellate review is governed by Maryland Rule 8–131. That rule provides in part:

> "**(a) Generally.**— ... Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another trial."

It is clear from the plain language of Rule 8–131(a) that an appellate court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word "ordinarily" clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will. *Richmond v. State,* 330 Md. 223, 235, 623 A.2d 630, 636 (1993); *Taub v. State,* 296 Md. 439, 441, 463 A.2d 819, 820 (1983). Moreover, we have held previously that we may exercise our discretion independently of the Court of Special Appeals, and we need not first conclude that there was an abuse of discretion by the intermediate appellate court. *Atlantic Mutual v. Kenney,* 323 Md. 116, 123, 591 A.2d 507, 510 (1991); *Crown Oil v. Glen,* 320 Md. 546, 562, 578 A.2d 1184, 1191 (1990); *Squire v. State,* 280 Md. 132, 134, 368 A.2d 1019, 1020 (1977).

---

4. In addition to *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), the State cites a footnote in *State v. Lancaster,* 332 Md. 385, 631 A.2d 453 (1993) in support of its position. This footnote restates *Robeson's* general proposition that an appellate court may affirm on a ground adequately supported by the record, but it does not suggest that the appellate court lacks discretion in the matter. *Lancaster,* 332 Md. at 402 n. 12, 631 A.2d at 462 n. 12.

Unless we opt to exercise our independent discretion in such a manner, however, our review of the Court of Special Appeals' opinion will be limited to determining whether the intermediate appellate court abused its discretion under Rule 8–131(a) in declining to consider the State's *Carroll* doctrine argument as a justification for the second search.

This Court has stated often that the primary purpose of Rule 8–131(a) is "to ensure fairness for all parties in a case and to promote the orderly administration of law." *Brice v. State,* 254 Md. 655, 661, 255 A.2d 28, 31 (1969) (quoting *Banks v. State,* 203 Md. 488, 495, 102 A.2d 267, 271 (1954)); *Basoff v. State,* 208 Md. 643, 650, 119 A.2d 917, 921 (1956). The interests of fairness are furthered by "requir[ing] counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings." *Clayman v. Prince George's County,* 266 Md. 409, 416, 292 A.2d 689, 693 (1972); *Braxton v. State,* 57 Md.App. 539, 549, 470 A.2d 1327, 1331–32, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984). Although it is clear that an appellate court does have the discretion to affirm a decision on a ground not raised below, *Robeson, supra; see also State v. Thomas,* 325 Md. 160, 176, 599 A.2d 1171, 1178 (1992); *Temoney v. State,* 290 Md. 251, 261, 429 A.2d 1018, 1023 (1981), this discretion should be exercised only when it is clear that it will not work an unfair prejudice to the parties or to the court.[5] A criminal defendant could suffer unfair prejudice if, for example, the defendant's response to a new argument posited by the State on appeal

---

**5.** Although the State has not cited to it, we stated in *Grant v. State,* 299 Md. 47, 472 A.2d 459 (1984), that "an appellee, in seeking an affirmance, is ordinarily entitled to assert any ground shown by the record for upholding the trial court's decision, even though the ground was not relied on by the trial court and was perhaps not raised by the parties." 299 Md. at 53 n. 3, 472 A.2d at 462 n. 3. Nevertheless, an appellate court need not affirm on an alternative ground raised for the first time on appeal. The concept of fairness is necessarily implicit in any "entitlement" that may ordinarily exist for the appellee, and again, the matter ultimately rests in the discretion of the appellate court under Rule 8–131(a).

depends on evidence which was not offered in the trial court. In this regard, we are persuaded by the reasoning of the Supreme Court when it declined to consider an alternative justification for an arrest that was raised for the first time on appeal:

"We do not think that these belated contentions are open to the Government in this Court and accordingly we have no occasion to consider their soundness. To permit the Government to inject its new theory into the case at this stage would unfairly deprive petitioner of an adequate opportunity to respond. This is so because in the District Court petitioner, being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine Finley or to adduce evidence of his own to rebut the contentions that the Government makes here for the first time.

"Nor do we think that it would be sound judicial administration to send the case back to the District Court for a special hearing on the issue of probable cause which would determine whether the verdict of guilty and the judgment already entered should be allowed to stand. The facts on which the Government now relies to uphold the arrest were fully known to it at the time of trial, and there are no special circumstances suggesting such an exceptional course."

*Giordenello v. United States,* 357 U.S. 480, 488, 78 S.Ct. 1245, 1251, 2 L.Ed.2d 1503, 1510–11 (1958). *See also United States v. Parr,* 843 F.2d 1228, 1232 (9th Cir.1988) (court foreclosed from affirming suppression of evidence on a theory not presented below when affirmance unfairly deprives defendant of opportunity to adduce evidence); *United States v. Salazar,* 805 F.2d 1394, 1399 (9th Cir.1986) (same); *United States v. Gould,* 741 F.2d 45, 50 n. 5 (4th Cir.1984) (appellate court may affirm a judgment on any basis supported in the record if to do so does not unfairly prejudice the appellant in presentation of his case); *United States v. Ordonez,* 737 F.2d 793, 801 (9th Cir.1984) (sustaining theory of admissibility not presented below would unfairly rob appellants of opportunity to argue weight, sufficiency, and trustworthiness of foundation before

trial judge or to offer facts to controvert evidence relied on by government).

■■ In the case *sub judice*, all of the facts necessary to assert the *Carroll* doctrine as a justification for the warrantless search at issue were known to the State at the time of trial, and the State could have argued the *Carroll* doctrine in the alternative without diluting its primary emphasis on the inventory justification. In the trial court, however, the State framed the issue in terms of two distinct searches, asserting probable cause to support only the search for the single vial and insisting throughout the suppression hearing that the second search was a mere "inventory." By structuring its argument in such a way, the State dissuaded Bell from offering evidence on the matters of probable cause for the second search and exigency of the circumstances. Here, as in *Giordenello*, Bell had no reason to cross-examine the police on these matters. Moreover, because warrantless searches are presumptively unreasonable, subject to only a few well-delineated exceptions, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973), and the burden of proving the applicability of an exception to the warrant requirement rests on the State, *Stackhouse v. State*, 298 Md. 203, 217, 468 A.2d 333, 341 (1983), Bell cannot be expected to rebut possible justifications for the search on his own initiative. The State may not lead the defendant and the trial court down a primrose path, only to leave them stranded when, on appeal, the State deems it advantageous to change its strategy. For these reasons, we decline to exercise our discretion under Rule 8–131(a) to address the State's *Carroll* doctrine argument that was raised for the first time on appeal, and we conclude that the Court of Special Appeals did not abuse its discretion in doing the same.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; CASE REMANDED TO THAT COURT WITH THE DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS; COSTS IN THE COURT OF*

192

*SPECIAL APPEALS AND IN THIS COURT TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*