740 A.2d 54

**STATE of Maryland**

v.

**Hosea Eugene PURVEY.**

**No. 6323, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Nov. 1, 1999.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Fred Warren Bennett (Michael E. Lawlor and Bennett & Nathans, LLP, on the brief), Greenbelt, for appellee.

Argued before MURPHY, C.J., and HOLLANDER and THIEME, JJ.

THIEME, Judge.

The State appeals the decision of the Circuit Court for Prince George's County granting the petition of Hosea Eugene Purvey for post-conviction relief. A jury convicted Purvey of first-degree murder on July 17, 1990, and he was sentenced by the court to life in prison on September 27, 1990. Purvey appealed his conviction to this court on October 29, 1990, and we dismissed the appeal on January 30, 1991. He petitioned the circuit court for post-conviction relief on June 9, 1995, and the court granted a belated appeal to this Court. On August 9, 1996, we affirmed Purvey's conviction in an unreported opinion. *Purvey v. State*, No. 1788, September Term, 1995, 111 Md.App. 748 (filed August 9, 1996)(*"Purvey I"*). The Court of Appeals denied certiorari on December 12, 1996.

On December 4, 1997, Purvey filed a second petition in circuit court for post-conviction relief, and he supplemented it on June 23, 1998, alleging that he received ineffective assistance of counsel. After a hearing on June 30, 1998, the circuit court granted Purvey's petition on September 3, 1998, ordering a new trial and adopting the Petitioner's Proposed Findings of Fact and Conclusions of Law and his Memorandum of Law as part of the court's opinion. On October 2, 1998, the State appealed, and it presents the following question:

> Did the post-conviction court err in granting Purvey a new trial when it concluded that his trial counsel failed to provide effective assistance of counsel?

We answer "yes" to this question and reverse. We explain.

## Facts

In *Purvey I*, this Court summarized the evidence produced at trial as follows:

Albert Young and Joseph Harris, the victim in this case, worked as laborers unloading produce trucks. On June 18, 1989, Young and Harris were awaiting a call from a trucker whose produce they were to unload at a Giant Food Store. At approximately 2:00 a.m., Harris told Young that he was going to Palmer's Liquor Store, which was three or four blocks away, and that Young could reach him there when the trucker arrived.

From the record, we discern that the liquor store area was a well known drug area. Young located Harris behind the liquor store among a group of forty or fifty people. As Harris reached for his gym bag, several men ran through the area firing handguns. Everyone began running and Harris told Young that he had been shot. Young called for help, but Harris died, either at the scene or shortly thereafter, from a chest wound. The bullet exited his body and was not recovered.

The sole evidence linking appellant to the crime came from a statement he is alleged to have made to Detective Roberto Hylton. Appellant was arrested on June 27, 1989, after Germaine "Fung" Bolden implicated him in the shooting. Appellant's alleged oral statement to Hylton contained the following:

He said he did not shoot anyone. It was Frank and Fung who did the shooting. He said that Fung, which is a nick name, is scared of Frank because they've been in Boys [*sic*] Village together for a long period of time.

He said I was at Palmer's Restaurant. Frank and Fung met me there. We saw a boy by the name, the initial E. He hangs with the Jamaicans on a hill on Bell Haven Drive. He shoots at the young dealers when we go up to sell drugs.

Then he continued, so he said, let's bust Slim.[1] Frank, Fung and I said, I drove, I drove them, I drove them to

---

1. Detective Hylton testified that in street parlance "bust" means to shoot someone, and that "slim" is used as a synonym for the pronoun "him."

where the guns were stashed in my aunt's white car. We came back to Palmer's. I don't know who had which gun the .380 or the .38. Left the car on Flagstaff Street, on Fung's Street. Fung is Germaine.

Frank and Fung fired a couple of shots. It hit the man. We ran to the car. I drove them to hide the gun. We did, and we drove away. Frank took off his black T-shirt in the woods. The next day we drove to where the guns were. Frank got them. We went to Seabrook skating. I think they're at Frank's house.

Appellant denied giving this statement to Detective Hylton. He testified that he was at Palmer's that evening selling drugs. He alleged that Fung was also there selling drugs. He was going toward the store to buy a soda when he heard gunshots. Along with everyone else, and because he had cocaine on his person, he ran to his car and left the area.

*Purvey I,* slip op. at 1–2 (some footnotes omitted).

Purvey produced two witnesses to testify at the post-conviction hearing held on June 30, 1998. Retired Police Detective Dennis Babcock had no recollection of Purvey's arrest or prosecution, but testified, "apparently I was basically providing a service for [Detective] Hylton which was to pick up Mr. Purvey and bring him back to our office." At the time he was questioned by Detective Hylton, Purvey was already in custody of the Prince George's County Detention Center on an unrelated auto theft charge for which he had not posted bond. Purvey's second witness was his trial counsel, Sean Cleary, who was questioned at length about representation he had provided eight years earlier. His specific testimony concerning Purvey's post-conviction claims, as well as additional facts, will be included in the discussion below.

### Discussion

The State, as appellant, makes a simple argument that Purvey is not entitled to a new trial because his representation was constitutionally adequate. Purvey alleges four separate grounds why his counsel failed to meet the constitutional

standard and he should get a new trial. Additionally, he claims that the State cannot make certain legal arguments on appeal because those arguments were not raised in the second post-conviction hearing. We find Purvey's arguments without merit and reverse the lower court's judgment on his second post-conviction petition. As a preliminary matter, we discuss the legal standard for a finding that assistance of counsel has been ineffective. We then turn to our second preliminary issue, whether the State can raise all its issues on appeal, before examining each of Purvey's allegations of ineffective assistance.

I

*Standard for Ineffective Assistance of Counsel*

Purvey must clear a high bar to prevail on his claim that counsel failed to provide representation comporting with the requirements of the Sixth Amendment of the United States Constitution. The Supreme Court set forth the standard for assessing this question in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Maryland courts have expounded upon this standard extensively in cases arising in this State. *See, e.g., Wiggins v. State,* 352 Md. 580, 602–03, 724 A.2d 1, 12 (1999); *Oken v. State,* 343 Md. 256, 283–85, 681 A.2d 30, 43–44 (1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *Gilliam v. State,* 331 Md. 651, 629 A.2d 685 (1993), *cert. denied,* 510 U.S. 1077, 114 S.Ct. 891, 127 L.Ed.2d 84 (1994); *State v. Thomas,* 328 Md. 541, 555–58, 616 A.2d 365, 372–73 (1992), *cert. denied,* 508 U.S. 917, 113 S.Ct. 2359, 124 L.Ed.2d 266 (1993); *State v. Colvin,* 314 Md. 1, 5–7, 548 A.2d 506, 508–09 (1988); *State v. Calhoun,* 306 Md. 692, 729–32, 511 A.2d 461, 479–81 (1986), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed.2d 528 (1987); *State v. Tichnell,* 306 Md. 428, 440–44, 509 A.2d 1179, 1185–87, *cert. denied,* 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986).

Under *Strickland,* a convicted petitioner claiming that ineffective assistance of counsel renders his conviction or sentence invalid must demonstrate that i) "counsel's representation fell

below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064, *and* that ii) he was actually prejudiced, *i.e.,* "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

In evaluating whether counsel's representation was reasonable, the court must examine certain acts or omissions identified by the petitioner "in light of all the circumstances" to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. The court looks at the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id.,* making every effort "to eliminate the distorting effects of hindsight." *Id.* at 689, 104 S.Ct. at 2065. Review is highly deferential, for "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. at 2065. Under the *Strickland* standard, courts recognize that no single set of norms for vigorous advocacy defines what it is to receive adequate representation that ensures a fair trial. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

Even if the defendant can show that counsel committed a professionally unreasonable error, he must also show that there is a reasonable probability, *i.e.,* probability sufficient to undermine confidence in the outcome, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Counsel's error

must have "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at ·687, 104 S.Ct. at 2064. Maryland cases paraphrase this standard: the defendant "must show that there is a substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Oken,* 343 Md. at 284, 681 A.2d at 44. "A proper analysis of prejudice ... should not focus solely on an outcome determination, but should consider 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993)).

Under *Strickland* and our precedents, however, we need not resolve both of these nettlesome issues when one of the required prongs is clearly absent, neither must we examine them in any particular sequence. "The object of an ineffectiveness claim is not to grade counsel's performance," thus "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. *Accord Oken,* 343 Md. at 284–85, 681 A.2d at 44.

■ Within the *Strickland* framework, we will evaluate anew the findings of the lower court as to the reasonableness of counsel's conduct and the prejudice suffered. Whether counsel's performance has been ineffective is a mixed question of fact and law. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. As a question of whether a constitutional right has been violated, we make our own independent evaluation by reviewing the law and applying it to the facts of the case. *See, e.g., Jones v. State,* 343 Md. 448, 457, 682 A.2d 248, 253 (1996). We will not, however, disturb the findings of fact and credibility determinations of the post-conviction court, unless they are clearly erroneous. Md. Rule 8–131(c); *Oken,* 343 Md. at 299, 681 A.2d at 51; *Tichnell,* 306 Md. at 442–43, 509 A.2d at 1186. Instead, we "re-weigh the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed." *Id.* at

443, 509 A.2d at 1186 (quoting *Harris v. State*, 303 Md. 685, 496 A.2d 1074 (1985)).

## II

### *The State's Preservation of Issues for Appeal*

■ Purvey asserts that this Court should not consider on appeal some of the reasoning with which the State bolsters its arguments, because it failed to preserve these "issues" for appeal by arguing them at the post-conviction hearing. For example, at the post-conviction hearing, Purvey argued that his lawyer did not adequately argue the motion to suppress the fruits of his arrest, which he claims was based on a faulty warrant. On appeal, the State augments its original response to this claim, which was based on *Strickland,* with an assertion that the police possessed probable cause to arrest Purvey. Therefore, post-conviction relief was inappropriate and he was not prejudiced by counsel's perceived omission. Purvey's objections, such as this one, redirect attention from the primary issue faced by this Court.

Under Md. Rule 8–131(a), the appellate court will not ordinarily decide any issue "unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." The primary purpose of this rule is " 'to ensure fairness for all parties in a case and to promote the orderly administration of the law.' " *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107, 114 (1994) (quoting *Brice v. State,* 254 Md. 655, 661, 255 A.2d 28, 31 (1969)).

■ Rule 8–131(a), however, anticipates exceptions and implies discretion. For example, "[t]he use of the word 'ordinarily' clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will." [2]

---

**2.** In *Wieland v. State,* 101 Md.App. 1, 33–34, 643 A.2d 446, 462 (1994), Judge Moylan expounds at length on the meaning of the "ordinarily"

*Id.* at 188, 638 A.2d at 113. Our discretion is limited, however, to those times "when it is clear that it will not work an unfair prejudice to the parties or to the court." *Id.* at 189, 638 A.2d at 113. "A criminal defendant could suffer unfair prejudice if, for example, the defendant's response to a new argument posited by the State on appeal depends on evidence which was not offered in the trial court." *Id.* at 189–90, 638 A.2d at 113.

The instant appeal, however, does not require us to cast about for an exception under which to consider the State's arguments, because we find that those arguments were presented in summary form during the post-conviction hearing. The State's "new" arguments are merely a fleshing-out, usually with information from the record, of the skeletal theories raised at the hearing. As such, they are not new. In both the post-conviction hearing and the briefs, the State has argued that defense counsel's performance was not constitutionally deficient because, even had he advanced Purvey's current theory in the trial court, the facts would not present adequate grounds for suppression of his statement to the police. Although presenting more detailed arguments might have been desirable, the State addressed the ultimate issue of whether Purvey had suffered ineffective assistance of counsel, at least in the general sense, at the post-conviction hearing. If the State, for example, had argued in the post-conviction hearing that only one prong of *Strickland* applied here, it might have been limited on appeal to relying on that single prong. The State, however, based its theory on both prongs of *Strickland* and now bolsters its reasoning with more specific information.

The instant appeal, moreover, is distinguishable from the cases cited by Purvey and numerous cases in which we and the Court of Appeals have declined to entertain issues brought by one side or the other for the first time on appeal. In distinguishable cases, such as *State v. Bell,* 334 Md. 178, 638

---

exception, *i.e.,* the alternative review provision of Rule 8–131(a) that an appellate court may use when it intends to remand a case to the trial court. The exception allows a higher court to instruct the lower one on legal issues that may arise on remand. Because we reverse the trial court here, we need not avail ourselves of this exception.

A.2d 107, defendants have often argued successfully *on direct appeal* from conviction that the State brought during the appellate process new legal justifications for the potentially unconstitutional actions of police. *See id.* at 190, 638 A.2d at 113 (holding that the Court of Special Appeals did not err when it declined to address question raised by State for first time on appeal of whether probable cause existed for second warrantless search). In contrast, we are now one step removed from that original appellate process. The ultimate issue before the post-conviction court, and this Court, is the adequacy of Purvey's defense attorney's performance, *not* the constitutionality of his arrest. The same attorney that Purvey claims failed him argued vociferously at his suppression hearing that Purvey's statement to police lacked voluntariness and that the police violated his Sixth Amendment right to counsel. During the post-conviction hearing, that attorney recalled that his client did not, at the time of the trial, challenge the validity of his arrest, just "that he did not say what they claimed he had said." It appears, then, that Purvey is using the petition process and an allegation of ineffective assistance of counsel as a Trojan Horse to bear the additional constitutional issues he failed to raise during his trial and the first post-conviction petition and appeal. We scrutinize only the horse itself, and not the surprises it contains, and reach our decision based upon our independent evaluation of the findings of the lower court under *Strickland. Oken,* 343 Md. at 299, 681 A.2d at 51.

## III

### *Purvey's Specific Contentions*

During the post-conviction hearing, Purvey raised four grounds upon which the circuit court found that he was denied effective assistance of counsel under the Sixth Amendment. We find, on each of these grounds, that Purvey failed to clear the high bar set in *Strickland,* and we thus reverse the order of the lower court for post-conviction relief. We address each issue in turn.

A

## Failure to Make Alternative Argument
## to Suppress Purvey's Statement

██ Police questioned Purvey in connection with the shooting after they removed him from the custody of sheriff's deputies in the Prince George's County Detention Center, where he was being held on an unrelated charge. The record shows that Detective Babcock, bearing a warrant for Purvey's arrest, transported him to the Prince George's County Criminal Investigations Department, so that Detective Hylton might question him. Police obtained the affidavit in support of the warrant based on the statements of Purvey's co-defendant, Jermaine "Fung" Bolden.

The record shows that Cleary filed a written motion to suppress prior to trial. He argued vigorously at a suppression hearing held on July 17, 1990, that Purvey's statement to police should be suppressed because it was involuntary. Moreover, he argued that police had violated Purvey's right to counsel under the Sixth Amendment. At the post-conviction hearing, Cleary recalled that at the time his client did not challenge *how* the statement was taken, but only maintained "that he did not say what they claimed he said." [3]

Purvey argued at the post-conviction hearing that counsel was ineffective for failing to move to suppress the statement because police lacked probable cause to arrest him. Purvey also argued that the action of removing him from the custody of the sheriff without his consent for the purpose of interroga-

---

3. We realize that citing the testimony of Purvey's attorney requires us to steer cautiously between Scylla and Charybdis. In its findings of fact, the post-conviction court questioned his credibility "in certain respects," and the State does not argue in its brief that the court's finding was clearly erroneous. Although we recognize that Cleary's preparation for the post-conviction hearing underwhelmed the court and his memory might have been shadowy on some of the minor aspects of the trial, we think it is safe to assume that he remembered the major tactical decisions that have been called into question here. This assumption is especially valid here, because Purvey's testimony at trial was consistent with Cleary's assertions at the post-conviction hearing.

tion violated the Fourth Amendment of the United States Constitution and Md.Code (1957, 1998 Repl.Vol.), Art. 87, § 45 (duties to sheriff to keep custody of county prisoners until such persons are "discharged by due course of law"), and Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 46 (duties of the sheriff toward prisoners).

From the evidence presented at the post-conviction hearing, we discern that Purvey's arrest warrant was valid. Purvey's post-conviction counsel argues, based on the testimony of Detectives Babcock and Hylton, that the sole probable cause possessed by the State concerning Purvey's culpability was "Fung" Bolden's statement to police. Bolden was a co-defendant. Maryland cases show that a co-defendant's statement to authorities may provide sufficient probable cause for issuing an arrest warrant. *See Mefford v. State,* 235 Md. 497, 201 A.2d 824 (1964), *cert. denied,* 380 U.S. 937, 85 S.Ct. 944, 13 L.Ed.2d 825 (1965) (arrest of defendant was legal where co-defendant had already confessed and turned over murder weapon). *See also Hopkins v. State,* 239 Md. 517, 211 A.2d 831 (1965); *Boone v. State,* 2 Md.App. 80, 233 A.2d 476 (1967); *Cherrix v. Warden,* 1 Md.App. 65, 227 A.2d 50 (1967). Probable cause in the context of a warrant for a person's arrest means "probable cause to believe that an offense has been committed and also probable cause to believe that the person to be arrested committed it." *Giordenello v. United States,* 357 U.S. 480, 483–84, 78 S.Ct. 1245, 1249, 2 L.Ed.2d 1503 (1958) (quoting Fed. R.Crim. Pro. 5(c)). Of course, the testimony of a co-defendant or other third person must be reasonably trustworthy. *Hopkins,* 239 Md. at 520, 211 A.2d at 833.

Here, it was clear that an offense had been committed, and Purvey fails to show that Bolden's statement did not give police probable cause to believe that Purvey was a culpable party. Purvey's post-conviction counsel correctly points out that the statements of co-defendants are not always considered reliable at trial. *See Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (holding that admission at trial of non-testifying accomplice's statement against penal

interest violates defendant's rights under the Confrontation Clause and noting that such statements are inherently unreliable); *Williamson v. United States,* 512 U.S. 594, 599–600, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994) (interpreting Fed. R.Evid. 804(b)(3) on statements against interest and stating that "[o]ne of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature."); *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (holding that trial court's reliance on co-defendant's statement, given only after he had been told that defendant had implicated him, was presumptively unreliable). For one to be convicted of a criminal offense *at trial,* however, a co-defendant's statement must be sufficiently reliable to allow the trier of fact to find guilt beyond a reasonable doubt. In contrast, for police to obtain a warrant *for arrest,* a co-defendant's statement must only be so reliable as to provide probable cause, a weaker evidentiary standard. The cases are thus distinguishable from the instant case. Furthermore, at the post-conviction hearing, Purvey failed to show why Bolden's statement would have been so unreliable as to not support probable cause. He, not the State, bore the burden of proof on this point. *See Green v. Warden,* 3 Md.App. 266, 238 A.2d 920 (1968) (holding where nothing in testimony of applicant for post-conviction relief indicated that his arrest was illegal and no such evidence was offered, petitioner was not entitled to relief on grounds that conviction was based on illegal search and seizure). Finally, the post-conviction court relied on *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), which is inapposite to the facts at hand. In *Dunaway,* the Court held that Fourth Amendment probable cause attached during the involuntary restraint and questioning of a perpetrator who had not yet been arrested. In contrast, before they questioned Purvey, police had probable cause and obtained a warrant, thus meeting their obligation under *Dunaway* before questioning began.

█ Because his arrest did not offend the Fourth and Fourteenth Amendments, we need not even address the issue

of whether Detective Babcock needed Purvey's consent to take him into custody. Consent is simply unnecessary when police have obtained a valid arrest warrant.

In view of Purvey's facially valid arrest, Cleary was under no professional obligation to argue Fourth Amendment issues at the suppression hearing. Neither is it likely that doing so would have changed the outcome of the suppression hearing or the trial. Whether another attorney might have done so in good faith to cover all contingencies is immaterial under *Strickland's* rule. We thus find that Purvey did not suffer ineffective assistance of counsel because Cleary did not raise the validity of the warrant at the suppression hearing.

### B

### Failure to Object During the Testimony
### of Detective Hylton

The post-conviction court also granted relief because Cleary did not object to questions posed by the prosecutor during the testimony of Detective Hylton. Detective Hylton testified that, when he conducted the interview with Purvey at the police station, Purvey orally waived his Fifth Amendment right to silence, and gave an oral statement. Without objection, Detective Hylton also testified that Purvey had refused to sign a written waiver of rights or reduce his statement to writing, explaining that "his grandmother had always told him not to write down anything which would get him in trouble." Purvey also testified to this sequence of events.

At the post-conviction hearing, Purvey argued that the jury might have inferred from the fact that he refused to write a statement that he "invoked his right to remain silent to avoid an admission of guilt." He characterizes Detective Hylton's factual blow-by-blow description about how the statement was taken as prohibited commentary on his right to remain silent. We disagree.

Try as he might, however, Purvey cannot change, over eight years later, the fact that he orally waived his rights under

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and participated in the questioning. He cites a string of cases that show how courts prohibit prosecutors from editorializing on a defendant's invocation of the right to keep silent or suggesting that juries draw from silence an inference of guilt. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (court erred when it allowed prosecutor to impeach defendant's exculpatory story, told for the first time at trial, by asking why defendant had not told story to police); *Younie v. State,* 272 Md. 233, 322 A.2d 211 (1974) (court erred when it admitted evidence that defendant had selectively refused to answer certain questions during custodial interrogation); *Casey v. State,* 124 Md.App. 331, 722 A.2d 385 (1999) (court erred when it admitted portions of tape recording of defendant's statement in which he requested counsel and in which police expressed opinion that he was not being truthful); *Zemo v. State,* 101 Md.App. 303, 646 A.2d 1050 (1994) (court erred when it permitted detective to testify that he gave defendant *Miranda* warnings and defendant then chose to remain silent); *Hunter v. State,* 82 Md.App. 679, 573 A.2d 85 (1990) (court erred when it allowed trooper to testify that defendant had immediately crossed street after causing fatal accident and called his attorney). *Hunter,* however, is completely inapposite here; it does not concern post-*Miranda* silence or actions. *Doyle, Younie, Casey* and *Zemo* pertain to the defendant's invocation of the right to remain silent *after Miranda* warnings have been given.

Here, Purvey never exercised the right to remain silent. He chose to give a statement, and a facially non-incriminating one at that, *after* hearing the *Miranda* warnings. As Purvey's post-conviction counsel points out, he could have stopped speaking at any time, and the fact of his silence would have been inadmissible. He did not do so. Even during the trial itself, Purvey did not disavow the fact that he had given police a statement after he had been *Mirandized.* He acknowledged that he had waived his rights and made a statement. His only concern was for accuracy, that "he did not say [in the statement] what they claimed he did." Purvey thus did not choose

to remain silent; he only refused to reduce to writing his existing statement and waiver of rights.

As have courts in other states when faced with similar facts, we now refuse to extend under *Miranda* and *Doyle* a refusal to write out one's statement into a full-fledged assertion of one's right to silence. *See, e.g., United States v. Boyce,* 594 F.2d 1246 (9 th Cir.1979) (court did not err when it admitted comments made voluntarily by defendant, even though defendant refused to sign waiver form when initially presented to him); *Williams v.* State, 258 Ga. 281, 368 S.E.2d 742 (1988) (following defendant's oral waiver of rights, his refusal to sign written waiver did not invoke right to counsel); *State v. Moorehead,* 811 S.W.2d 425 (Mo.Ct.App.1991) (court did not err when it admitted testimony on post-arrest silence when defendant had earlier waived *Miranda* rights and given an oral statement, but later refused to reduce statement to writing); *State v. Adams,* 127 N.J. 438, 605 A.2d 1097 (1992) (defendant's invocation of right to silence for written statements only did not preclude admission of oral statements he made at interrogation). In *Moorehead,* the facts of which resemble the instant case, the court wrote, "Appellant's refusal to make a written statement, without more, was not an invocation of his right to remain silent and, therefore, the admission of his silence in response to the Detective's subsequent observation was not error, plain or otherwise." *Moorehead,* 811 S.W.2d at 430 (citations omitted) (citing *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987)). We agree.

Just as hindsight cannot change Purvey's post-*Miranda* statement to police, we cannot use it to second-guess Cleary's trial tactics. While some attorneys might have objected to Detective Hylton's account of Purvey's refusal to reduce his proper oral statement to writing, Purvey has not proven that Cleary's failure to do so was objectively unreasonable. The cases cited above show that Detective Hylton's testimony probably was permissible, and Purvey himself perceived, at the time of the trial, that his oral statement had been volun-

tary. Neither has Purvey proven that, but for Cleary's decision not to object when the State offered this testimony, the jury probably would have decided otherwise. We thus find that Purvey did not suffer ineffective assistance of counsel because Cleary failed to object to Detective Hylton's testimony.

## C

### Eliciting Evidence of Other Crimes

The third theory upon which the post-conviction court granted relief was that Cleary allowed prejudicial testimony that showed Purvey had sold illegal drugs. At the trial, Purvey testified that he was at the scene of the crime selling crack cocaine when the shooting occurred. When asked by the State's Attorney about the length of his "career" in distributing illicit substances, Purvey answered, without objection, that he had been selling crack for seven years. Purvey now maintains that Cleary "fail[ed] to avoid having [him] testify that he was present at the scene of the crime selling crack cocaine," and that he also failed to object to the State's "irrelevant and highly prejudicial cross-examination." We do not agree.

Once again, Purvey tries to rewrite what the moving finger has writ. At trial, he exercised his fundamental constitutional right to testify in his own defense. See *Rock v. Arkansas*, 483 U.S. 44, 49–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987) (criminal defendant has right to take witness stand and testify on his own behalf under Fifth, Sixth and Fourteenth Amendments to the Constitution); *Jordan v. State*, 323 Md. 151, 155–56, 591 A.2d 875 (1991) (quoting *Rock*, 483 U.S. at 49–50, 107 S.Ct. at 2708, and other cases). In fact, by offering him as a witness, Cleary simply accommodated Purvey's expressed desire to take the stand. Purvey wanted to "admit to selling the crack because that's what he did," in the hope that the jury would conclude that he was only a drug dealer and not a murderer. He chose to explain his presence at the scene, as well as his flight, by being forthright with the jury about his

true line of work: "I ran to my car 'cause I had ... drugs on me and I knew the police was coming." He also testified that i) he did not commit the shooting, ii) he did not know who did, and iii) he had never used a gun. On cross-examination, he admitted that he had been selling drugs for seven years and that, on the night of the shooting, he had planned to sell all of his supply of crack cocaine and then go home.

Clearly, Purvey's defense strategy boomeranged, but the post-conviction court erred when it determined that the strategy was objectively unreasonable, "served absolutely no purpose," and "tarnished Petitioner's credibility in the eyes of the jury." The post-conviction court theorized that Purvey lost a credibility contest at trial that he might have easily won. We think the court was too willing to apply the imprimatur of unreasonableness simply because Purvey was convicted.[4] "We cannot know whether a different trial strategy would have led to a different result, but the fact that the selected strategy was ultimately unsuccessful does not mean that it was an unreasonable choice." *Cirincione v. State,* 119 Md.App. 471, 493, 705 A.2d 96, 106, *cert. denied,* 350 Md. 275, 711 A.2d 868 (1998). To be sure, Purvey's "let it all hang out" strategy is controversial, and not every criminal defense attorney would be willing to let a client so freely testify that he was not a model citizen. Yet, Cleary's advice to be "open" and "straightforward" with the jury might have worked if circumstances, perhaps unknowable to Cleary, had been slightly different. As a matter of law, this strategy was but one valid

---

4. For license to dip below the surface in its consideration of unreasonableness, the post-conviction court relies on three cases from the federal Eleventh Circuit, especially *Huynh v. King,* 95 F.3d 1052 (11th Cir.1996). Yet *Huynh* is inapposite here. In that case, defense counsel declined to file a meritorious suppression motion at a state court trial in order to obtain later for the accused a more favorable federal habeas corpus review on grounds of ineffective assistance of counsel. The Court of Appeals found this action to be objectively unreasonable. Here, no evidence was adduced that would show that Cleary so cynically manipulated the judicial system. Cleary's strategy instead seems based on a good-faith attempt to respect Purvey's wishes and, perhaps, immunize the jury against expected attempts by the prosecutor to insinuate that he was a bad actor because he sold drugs.

option in "the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, and this Court must "indulge a strong presumption that counsel's conduct" was reasonable under the circumstances at the time of the trial. *Id.*

In making his present argument, furthermore, Purvey misconstrues the meaning of Md. Rule 5–404 and *State v. Faulkner,* 314 Md. 630, 552 A.2d 896 (1989). *Faulkner* expounds upon the proposition that the State may not introduce evidence of prior crimes to prove that the defendant is guilty of the offense for which he is on trial. Even under *Faulkner,* "evidence of other crimes may be admitted . . . if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *Faulkner,* 314 Md. at 634, 552 A.2d at 897–98 (citing *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680, 684 (1976)). The *Ross* exceptions cited in *Faulkner,* however, apply only when *the State* tries to use evidence of other crimes, wrongs or acts to show criminal propensity. Rule 5–404 allows the accused to present "[e]vidence of pertinent trait[s] of character" in his own defense, Md. Rule 5–404(a)(1)(A), and Purvey's testimony fits squarely in this exception.

Even if Cleary had embraced a more evasive strategy, as long as Purvey exercised his constitutional right to testify, he would have been vulnerable to the State's impeachment efforts, which might have included presenting evidence of prior convictions and other bad acts, had he presented character evidence. Additionally, the prosecutor might have evoked testimony about his drug-related activity for another purpose, such as "proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident." Md. Rule 5–404(b). The prosecution, for example, may have elicited such testimony to show motive, *i.e.,* that the killing was part of a drug-related territorial dispute, as the State argued. By evoking testimony about Purvey's illegal line of work, Cleary did no more than assist

him to put in the best light damaging evidence that would have almost inevitably surfaced. Cleary cannot be held responsible for the fact that the jury was not convinced, when it is unlikely that any other strategy would have yielded Purvey a happier result. We thus find that Purvey did not suffer ineffective assistance of counsel, because Cleary elicited evidence of Purvey's other criminal activities, and did not object when the State evoked such evidence on cross-examination.

## D

### Error During Opening Statement and Closing Argument

The final leg upon which the post-conviction court's decision rests is Cleary's perceived failure to deliver an adequate opening statement and to interrupt and properly object to "improper comments" in the State's Attorney's closing argument. The post-conviction court found that the effect of these oversights "cumulatively denied Petitioner the right to the effective assistance of counsel." The post-conviction court is again wrong, and we will address each perceived omission in turn.

Purvey correctly notes that Cleary's opening statement was brief. After introducing himself and the defendant, Cleary pointed out that "what I'm going to say and what the State['s] Attorney has said in our opening argument is not evidence." He noted that the State had little evidence of Purvey's involvement in the shooting and asked the jury to pay close attention to the information presented. At the post-conviction hearing, Cleary explained that, when the trial began, he was unsure as to whether Purvey would testify. As we show above, Purvey's testimony drove the trial strategy. Cleary believed, therefore, that making a brief opening statement was preferable to waiving a statement completely. Now Purvey argues that Cleary wasted an opportunity to outline his theory of the case and to remind the jury of the State's burden of proof and the constitutional presumption of innocence. Quoting an Illinois case, Purvey informs us that " 'many commentators have stated that the opening statement is the single most important

portion of the trial.' " *See People v. Lee,* 185 Ill.App.3d 420, 133 Ill.Dec. 536, 541 N.E.2d 747, 761 (1989).

Purvey has not shown, however, that Cleary's decision to abbreviate the opening statement falls below the standard of representation compelled by the Constitution. In criminal matters, the State bears the burden of proof, and the defendant need not put on a single witness. He only needs to create reasonable doubt. He may even waive the opening statement if doing so achieves his objective, for the purpose of the opening statement is " 'to apprise with reasonable succinctness the trier of fact of the questions involved and what the State or defense *expects to prove* so as to prepare the trier of fact for the evidence to be adduced.... An opening statement by counsel is not evidence and generally has no binding force or effect.' " *Malekar v. State,* 26 Md.App. 498, 501–02, 338 A.2d 328, 330, *cert. denied,* 276 Md. 747 (1975) (quoting *Wilhelm v. State,* 272 Md. 404, 411–12, 326 A.2d 707, 714 (1974)) (emphasis added). *See also Cirincione v. State,* 119 Md.App. at 498, 705 A.2d at 108 ("under certain circumstances it is not ineffective assistance to decline to deliver any opening statement at all, even in a death penalty case"). Although making a more extended opening statement is customary and other attorneys might have approached differently uncertainties on the first day of trial, Purvey does not show that Cleary's performance was objectively unreasonable in light of the circumstances. His opening statement, although sparse, put the jury on notice to beware the State's arguments and evidence. "The length of the opening statement is not of itself dispositive of either prong of the *Strickland* test, and there is no constitutional rule that counsel must employ any particular rhetorical technique...." *Id.* Moreover, Purvey does not show that a recitation about reasonable doubt or the burden of proof would have availed him anything. After all, the trial judge would have thoroughly covered those issues in jury instructions.

Purvey next challenges Cleary's failure to object to the prosecutor's "improper" comments made during closing

arguments. At least three times, the State's Attorney asserted that Cleary was merely "blowing smoke" to "divert [the jury's] attention from the facts." At the post-conviction hearing, Cleary testified that he saw no reason to interrupt her: "I felt that it was harmless and that it was just argument by the State[.]" Purvey now argues that the State's comments prejudiced the defense. He maintains that they "had nothing to do with the facts of the case," and they "effectively accused defense counsel of lying to the jury."

At its heart, however, Purvey's complaint lacks substance. He protests the prosecutor's use of a popular figure of speech, but the underlying substance of the State's argument was constitutionally permissible. The prosecutor's statements were an acceptable characterization of Purvey's efforts to undermine the credibility of the State's evidence. The law is clear that, in presenting closing arguments, the court concerns itself more with content than with rhetoric:

> [L]iberal freedom of speech should be allowed. There are not hard-and-fast limitations within which the argument of earnest counsel must be confined—no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions.

*Wilhelm,* 272 Md. at 413, 326 A.2d at 714. We limit counsel from "stat[ing] and comment[ing] upon facts not in evidence or to state what he could have proven," *id.,* and we can justify reversal where "the jury was misled or influenced to the prejudice of the accused," *e.g.,* a remark that would appeal to racial or religious prejudices. *Campbell v. State,* 65 Md.App. 498, 505, 501 A.2d 111, 114, *cert. denied,* 305 Md. 599, 505 A.2d 856 (1985). *See also Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). The State's Attorney did none of these things. All she did was strongly strive for rhetorical effect through the use of an extravagant

and facetious figure of speech that the jury examine critically Cleary's efforts to deflate the credibility of the State's witnesses. This tactic is permissible in closing arguments, and that Cleary refrained from protest is objectively reasonable.

Finally, Purvey claims that Cleary did not move to strike as improper one of the State's comments on punishment during the closing argument. The transcript shows that Cleary objected, and the trial court sustained the objection:

> [PROSECUTOR]: Mr. Cleary said that Mr. Purvey's life is at stake. So was Joseph Harris'[s]. Fortunately, what happens to Mr. Purvey after the verdict is reached is not up to the jury. That is the judge's province. He can get probation, he can get a slap on the hand . . .
>
> [MR. CLEARY]: Objection, Your Honor.
>
> [THE COURT]: Yes. Let's not go into that bit. I sustain your objection.

Purvey now asserts that Cleary was ineffective because he failed to follow up by moving to strike and asking for a curative instruction. At the post-conviction hearing, Cleary said he did not seek a curative instruction because he did not wish for the jury to hear the offending information again.

Although the prosecutor's comment was improper, Purvey does not claim that her objectionable line of attack continued after Cleary's objection was sustained. That the State's Attorney made but a single unacceptable remark is significant.

> [N]ot every ill-considered remark made by counsel . . . is cause for challenge or mistrial. . . . "[T]he fact that a remark made by the prosecutor in argument to the jury was improper does not necessarily compel that the conviction be set aside. The Maryland Rule is that unless it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's Attorney, reversal of the conviction on this ground would not be justified."

*Wilhelm*, 272 Md. at 415–16, 326 A.2d at 716 (quoting *Reidy v. State*, 8 Md.App. 169, 172, 259 A.2d 66, 67–68 (1969)).

For the purpose of granting a mistrial, Maryland courts distinguish between one improper remark and an entire course of conduct. The recent Court of Appeals opinion in *Hill v. State*, 355 Md. 206, 226, 734 A.2d 199, 209 (1999), is illustrative. In *Hill*, the State's Attorney persisted, over defense counsel's numerous sustained objections, in informing the jurors that they had a responsibility to keep their community safe from people like the defendant. The Court of Appeals found the State's "take back your community" line of attack to be wholly improper. It charged this Court, on remand, "to take account of the persistency of the prosecutor's conduct—continuing to make these remarks time and again despite the court's rulings that the remarks were improper." *Id.* at 226, 734 A.2d at 210. *See also Wilhelm*, 272 Md. at 436, 326 A.2d at 727 (affirming conviction and noting that because only one improper remark had been made, prejudice was unlikely). The facts in the instant appeal resemble *Wilhelm* more closely than they do *Hill*. Purvey identifies only one improper comment. Cleary objected to that comment with the effect of curtailing the State's line of argument. We find it unlikely, therefore, that the jury was prejudiced by this one remark. We note that Cleary's reason for not requesting a strike—that he sought not to reinforce the offending information in the minds of the jury—is an objectively reasonable trial tactic.

Because we find that Cleary handled in objectively reasonable fashion each of the three improprieties of which Purvey complains, we do not need to address the cumulative effects of these perceived omissions. Although other attorneys might have responded differently, Cleary's opening statement and responses to the prosecutor's closing argument fall within "the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, as do his other actions addressed *supra*. We thus reverse the judgment of the post-conviction court.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**