## Commonwealth ex rel. v. Seventh Day Baptists et al., Appellants.

Argued November 26, 1934. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*K. L. Shirk,* with him *Paul W. Orth,* for appellants.

*S. M. R. O'Hara,* Deputy Attorney General, with her *Wm. A. Schnader,* Attorney General, for appellee.

OPINION BY MR. JUSTICE DREW, January 7, 1935:

In this action of quo warranto, which was brought upon the suggestion of the attorney general, the Commonwealth seeks to have the corporate charter of the Seventh Day Baptists, of Ephrata, declared forfeited for misuser, and to have certain persons who claim to be trustees of the corporation ousted. By agreement the case was tried without a jury, and, after hearing the testimony, the court below found that the defendant corporation had wilfully violated the provisions of its charter and exceeded the powers therein given, that it had failed to use the powers and privileges granted by its charter, and that it had been guilty of waste of the corporate property. Accordingly, judgment of ouster was entered as prayed for, and from that judgment the corporation has appealed.

Defendant corporation is a society of Seventh Day German Baptists, a branch of the religious sect of German Baptist Brethren, commonly known as Dunkers or Dunkards. The society was organized about 1728, and several years later a semimonastic community of the members of the society, with a convent (the "Sister House") and a monastery (the "Brother House"), was

established at Ephrata, in Lancaster County. The height of the society's influence was reached shortly before the Revolution, and during the war its monastic members nursed many wounded soldiers, a large number of whom are buried on the grounds, in a cemetery which is still in existence. The society became unpopular for the reason, inter alia, that it had opposed the armed resistance to Great Britain, and after the war the number of its monastic members rapidly decreased. By special Act of Assembly of February 21, 1814, P. L. 54, the society was incorporated as the Seventh Day Baptists, of Ephrata. The act recited that, since the monastic branch of the society was "reduced to a few aged and infirm members, who are incapable of managing their estate," the property of the society should be held by the corporation, the trustees of which were given power "to manage the business of the said society," and "to lease the lands and real estate belonging to the same; provided, they shall grant no lease nor dispose of any real estate for a longer term than four years"; the proceeds of the property, it was provided, were "to be applied from time to time, for the use, maintenance and support of the members of the society, and for the support of the poor of the said society." Later, by the Act of February 19, 1828, P. L. 108, and the Act of February 23, 1842, P. L. 30, the trustees were specifically empowered to sell certain portions of the land owned by the corporation; but, with these exceptions, no authority to sell land was given at any time.

The testimony taken below has not been printed in the record before us; accordingly we must assume, on this appeal, that the court below, from competent evidence, found the facts necessary to sustain its conclusions of law, and also all facts warranted by the evidence: Hoffman v. Kline, 300 Pa. 485. From the facts thus found we are informed that on twelve different occasions, beginning in 1895, without any sort of authority from the legislature, persons purporting to act for the corporation undertook to convey to third parties, for various consid-

erations, parcels of land belonging to the corporation. Furthermore, the trustees permitted valuable antique articles of personal property to be sold, and tore down the Brother House, a building of historic value, when it might have been preserved. The Sister House is still standing, together with the place of worship, known as the Saal. An admission fee for showing visitors through the cloister has been charged, although there has been no proper accounting for moneys thereby acquired. No rents have been received by the corporation for several years, and no taxes have been paid since 1928; if any rents were collected, they were kept by the persons who collected them. No charity is dispensed, either to indoor members or to the poor of the society, and this charter purpose has long been disregarded. The last indoor member of the society died a number of years ago, and no new members have been admitted for eight or nine years. No religious services are regularly held, and the society has ceased to function either as a religious or as a charitable organization.

Appellant's statement of questions involved, which limits the scope of the appeal (N. Y. & Pa. Co. v. N. Y. C. R. R. Co., 300 Pa. 242; Reese v. Pgh., 313 Pa. 32), presents but one question for our decision: were the unauthorized sales of land and the corporate waste and mismanagement found by the court below sufficient justification for the judgment entered? The question must be answered in the affirmative. The facts recited above disclose a long record of flagrant violation of the provisions of the corporate charter; the corporation has disregarded the purposes for which it was created, it has violated the condition upon which it was enabled to acquire and hold property, it has exercised its corporate charter to administer a charitable use for the private gain or benefit of its trustees, and there has been supine neglect to remedy the situation. Under these circumstances we have no hesitation in affirming the judgment of ouster entered below. As we said in Com. v. Commercial Bank, 28 Pa. 383, 389,

"It may be affirmed as a general principle that where there has been a misuser, or a nonuser, in regard to matters which are of the essence of the contract between the corporation and the state, and the acts or omissions complained of have been repeated and wilful, they constitute a just ground of forfeiture." See Chincleclamouche Lbr. & Boom Co. v. Com., 100 Pa. 438, 445; Terrett v. Taylor, 9 Cranch 43, 51; Mumma v. Potomac Co., 8 Pet. 281, 287. There can be no doubt that in the instant case these conditions are satisfied. The corporation received the land of the society for the express purpose of devoting the income therefrom to the maintenance and support of the members and the poor of the society. This purpose it has continuously disregarded; and, as the court below found, it no longer fulfils a religious or charitable purpose of any sort. Where, as here, the corporation is organized for charitable purposes, its property is, in a sense, held in trust for the public (see Humane Fire Co.'s App., 88 Pa. 389, 393; Hamilton v. John C. Mercer Home, 228 Pa. 410, 420), and the continual waste of it is directly detrimental to the public interest. This is particularly true where the property itself has become of historic value.

Appellant contends that it is not to be deprived of its charter, because it retains sufficient property to carry out its corporate objects. The court below did not so find, however, and, inasmuch as the evidence is not before us, this contention cannot be regarded as more than a mere assertion of counsel. In any case, the argument has no merit. It is not necessary that the waste of a corporation's assets shall have continued to such an extent that its purposes are impossible of fulfilment, before its charter may be forfeited. Enough appears where a continuous and deliberate waste is shown, and where the corporate purposes have been so disregarded that the public is completely deprived of the charitable benefits for which the corporation was created.

The judgment is affirmed.