INASMUCH GOSPEL MISSION, INC., *v.* MERCAN-
TILE TRUST CO., ET AL.
CHILDREN'S FRESH AIR SOCIETY *v.* SAME
SALVATION ARMY *v.* SAME
VOLUNTEERS OF AMERICA *v.* SAME

[Nos. 69-72, October Term, 1944.]

232

*Decided January 10, 1945.*

*F. Murray Benson* and *J. Cookman Boyd, Jr.*, with whom were *David P. Gordon, Tydings, Sauerwein, Levy & Archer* and *Boyd & Boyd* on the brief, for the appellant, Inasmuch Gospel Mission.

*G. Van Velsor Wolf,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellant, Salvation Army.

*Michael J. Manley* submitted on brief for the appellants, Children's Fresh Air Society and Volunteers of America.

*Richard F. Cleveland* and *J. Crossan Cooper, Jr.,* with whom were *John M. Butler, Venable Baetjer & Howard,* and *William M. Travers* on the brief, for the appellees in all four cases.

DELAPLAINE, J., delivered the opinion of the Court.

Isabel G. H. Brown, of Baltimore, in her will executed on January 22, 1935, after leaving small bequests to her brother, Edward Hamilton Hough, and sister, Le Page Hough Robbins, and several others, directed that all the residue of her estate be divided equally among Volunteer Hospital of America, Inasmuch Mission, Fresh Air Society, and Salvation Army. "These four," she added, "I consider are carrying on a great work. This money I wished used in some fitting memorial for my beloved son, Hamilton Freeman Brown. I would suggest it be used in fitting up a room or ward, * * * or any other thing they may need, but it is not to be used for current expenses."

The testatrix died in July, 1940. In February, 1943, after delay caused by a caveat, Mercantile Trust Company of Baltimore qualified as executor in the Orphans'

Court of Baltimore City. The residue amounts to approximately $45,000. There is no doubt that Inasmuch Gospel Mission, Inc., which has been operating for many years on West Saratoga Street in Baltimore, was intended as one of the four residuary legatees. Misnomer of a corporation will not defeat a devise or bequest to it, provided that the identity of the corporation is otherwise sufficiently certain. *Woman's Foreign Missionary Society v. Mitchell*, 93 Md. 199, 48 A. 737. The executor filed a bill of complaint in the Circuit Court of Baltimore City alleging that the mission had been incorporated, but that the corporation had been adjudicated bankrupt before the death of testatrix, and praying for direction as to how the share intended for the mission should be distributed. The chancellor decreed that the bequest to the mission was void, and the share should be distributed to the brother and sister of the testatrix as her next of kin. The mission and the other three residuary legatees appeal from the decree, the latter because they think the share should be divided among them.

It is well settled that an executor has the right to file a bill in equity to obtain a construction of the will of the testator. *Littig v. Hance*, 81 Md. 416, 434, 32 A. 343. The jurisdiction of equity in the construction of wills is not limited by the theory that it is merely an incident of the general jurisdiction over trusts, but arises from the difficulty of understanding the meaning of complicated provisions in a will, or the uncertainty as to the rights and interests of the parties claiming under them. It is recognized that a court of equity may intervene in the distribution of an estate by reason of special circumstances, on account of which the power of the Orphans' Court may not be entirely adequate. *Curtis' Estate v. Piersol*, 117 Md. 170, 83 A. 87. The Orphans' Courts shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred by law. Code, 1939, Art. 93, Sec. 272. The Legislature has not conferred power upon the Orphans' Courts to decide any question as to the validity of a de-

vise or bequest. Such a question can be determined only in a court of law or equity. *State, to Use of Trustees of Methodist Episcopal Church, v. Warren,* 28 Md. 338, 355. This case presents more than a question of identity, which was the question in *Estate of Childs v. Hoagland,* 181 Md. 550, 30 A. 2d 766.

Inasmuch Gospel Mission was incorporated in 1924 by J. Le Roy Hopkins, its founder; Frederick Grimes, its first superintendent, and Charles H. Isreal. By provision of the charter, the three incorporators were made trustees with power to add to their number from time to time to the extent of five trustees. The objects of the corporation were (1) to provide homes for destitute men, (2) to operate an industrial department to enable them to be self-supporting, and (3) to conduct a non-denominational religious mission. It is unquestioned that a charitable corporation, authorized by its charter to acquire property, may receive devises and bequests to be applied in a specified way within the charitable purposes of the corporation as described in its charter. *American National Red Cross v. Felzner Post,* 86 Ind. App. 709, 159 N. E. 771. Charitable devises and bequests, because of their lofty motivation and the general benefits they confer, should be strongly favored by the Courts. 14 *C. J. S., Charities,* Sec. 11.

In 1927, after the death of Isreal, Grimes resigned as superintendent. In a letter to Hopkins, he ascribed his resignation to his physical condition, but gave assurance that there would always be a warm spot in his heart for the mission. He was succeeded by J. V. Christy, who served until his death in 1933, when his widow became superintendent. Mrs. Christy (now Mrs. Margaret Heintzman) testified that she and her husband served as trustees. Grimes, however, declared that he did not resign as trustee, but only as superintendent. When Hopkins became ill, Charles W. Gosnell and W. J. Shamberger were elected to the board. After the death of Hopkins in 1938, Gosnell served as president of the board. From that time on the mission encountered

financial difficulties. The corporation had no money, and the real estate was mortgaged for $3,900. Gosnell testified: "The wagons and trucks broke down; * * * the horses died; things were slow; and we were going back all the time." At a meeting on June 3, 1940, attended by Gosnell, Mrs. Christy, and Shamberger, Gosnell reported that the income of the mission had been falling off for a long time, that it was unable to pay its bills, and it could not continue any longer. The board accordingly resolved to file a petition in bankruptcy. The corporation was adjudicated bankrupt on June 5, 1940.

In the Summer of 1940 Grimes took first steps to save the gospel mission. He bought the contents of the mission buildings for $200, and was also instrumental in having several men stay in the buildings as a protection to the property, pending foreclosure sale. In 1941 the buildings were sold under foreclosure to a real estate company, but Grimes shortly afterwards purchased them from the company. He then arranged for a reorganization meeting in the office of Oregon Milton Dennis on October 1, 1941. At that meeting Grimes, Dennis, F. Murray Benson, William E. Hearn, and Howard P. Wright were elected trustees. The board thereupon elected Dennis president; Hearn secretary, Wright treasurer, and Grimes superintendent. Since that time the work of the mission has flourished. It was testified that the mission now owns and operates five motor trucks for making collections of waste paper and junk, and at times employs as many as 22 men. Gosnell admitted that, since the reorganization, he had seen the mission in operation under the same name as before, and had found its store stocked and doing business in the same manner as before. In addition to the buildings which it owns on Saratoga Street and one on Bradley Street where waste paper is baled, it has also contracted to purchase two others on Greene Street, which it has been using under a lease.

It is not disputed that Gosnell, Mrs. Christy, and Shamberger intended to close the mission in 1940 because they "could not make it go." But its main activities are being

conducted at the same place as before, and have even been intensified. Gosnell, while attempting to defeat the bequest of more than $10,000 to the mission, of which he himself was once superintendent, admitted in the court below that the sign in front of the mission had never been taken down. In 1834, Justice Story stated the doctrine that a corporation is subject to dissolution either by a surrender of its corporate franchises or by a forfeiture of them for misuser and nonuser. *Mumma v. Potomac Co.*, 8 Pet. 281, 287, 8 L. Ed. 945, 948. In the same year, however, the Supreme Judicial Court of Massachusetts declared that, while it is true that a corporation may forfeit its charter by an abuse of its franchises, the forfeiture can take effect only upon a judgment of a competent tribunal. In delivering that decision, Justice Morton said: "There must be the same agreement of the parties to dissolve, that there was to form the compact. It is the acceptance which gives efficacy to the surrender. * * * The power of dissolving itself by its own act, would be a dangerous power, and one which cannot be supposed to exist." *Boston Glass Manufactory v. Langdon*, 24 Pick. 49, 41, Mass. 49, 35 Am. Dec. 292, 294.

We have likewise held in this State that the courts are bound to regard a company, incorporated in accordance with all the requirements of the law, as an existing corporation until it is dissolved by a judicial proceeding on behalf of the government that created it. *Laflin & Rand Powder Co. v. Sinsheimer*, 46 Md. 315, 320, 24 Am. Rep. 522. Even though a corporation may cease to function on account of its financial condition or as a result of proceedings against it, it cannot be considered as dissolved until it has been so adjudged by the sovereign power or by judicial decision. The surrender of a charter can be made only by some formal act of the corporation, and will be of no avail until accepted by the State. *France, Principles of Corporation Law*, 2d Edition, Sec. 42. It was held in *Chemical National Bank of Chicago v. Hartford Deposit Co.*, 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595, that although a receiver has been appointed for a corporation,

it still exists if its corporate life has not been extinguished by action of directors or judgment of forfeiture. We adopt the view, stated by Chief Judge Cardozo in the New York Court of Appeals, that neither bankruptcy, nor cessation of business, nor dispersion of stockholders, nor absence of directors, nor all of these difficulties combined, "will avail without more to stifle the breath of juristic personality." *Petrogradsky Bank v. National City Bank of New York,* 253 N. Y. 23, 170 N. E. 479, 482.

It is urged that Grimes resigned from the board of trustees, and hence possessed no right to use the corporate franchise. Grimes, however, vigorously maintained that, although he and Mrs. Christy, "could not get along together," he never resigned from the board. The law is clear that failure to elect officers of a corporation at the proper time does not cause a dissolution of the corporation or operate as a surrender of the corporate franchise, for the corporate body has a potentiality which might be called into action by proper authority without affecting its identity. Of course, if the corporate offices are filled and their functions exercised by officers *de facto,* the fact that there is a deficiency of officers may be established by judicial proceedings brought to enforce a forfeiture on that ground. *Bridge over River Lehigh, President, etc., of, v. Lehigh Coal & Navigation Co.,* Pa., 4 Rawle, 9, 26 Am. Dec. 111. It is significant (1) that Gosnell and Mrs. Christy, who failed in their efforts to operate the mission, make no claim to the bequest, but challenge the claim of the board, which has been operating the mission since 1941 with conspicuous success; (2) that after Grimes testified that he did not resign from the board, it was reported that the minute book of the corporation has been lost; and (3) that when Grimes inquired in 1941 whether it would be necessary for him to form a new corporation, the trustee in bankruptcy told him he could keep the same corporate name as far as he was concerned. Grimes, as the only living incorporator, was vested with power by the charter to fill vacancies on the board of trustees. When incorporators are clothed with

power to fill any vacancy in their body, their rights are not extinguished by neglect, but are merely dormant. *Philips v. Wickham,* N. Y., 1 Paige, 590, 595.

It is recognized that when a corporation is organized for charitable purposes, its property is held in trust for the public. *Commonwealth ex rel. Schnader v. Seventh Day Baptists of Ephrata,* 317 Pa. 358, 176 A. 17; 14 *C. J. S., Charities,* Sec. 76. Hence, a tribunal vested with power to dissolve a charitable corporation on account of a breach of trust, will ordinarily not exercise that power while any person remains who is willing to exercise the public trust. It is also held that a bequest to a charitable institution does not lapse merely because there are some changes in the institution, as long as its general purposes are kept in view by those in control and the institution continues to function in its customary manner. *Snider v. Snider,* 70 S. C. 555, 50 S. E. 504, 106 Am. St. Rep. 754. The mere fact that a charitable or educational institution, to which a bequest has been given, is under a different ownership and management from that which the testator knew does not cause a forfeiture of the bequest, especially when the change in operation is for the purpose of insuring continued existence of the institution. *John Robinson Hospital v. Cross,* 279 Mich. 407, 272 N. W. 724; *Re Will of Hagan,* Iowa, 14 N. W. 2d 638, 152 A. L. R. 1296. In the instant case there is nothing to show that the testatrix wanted any part of the residue to go to some other organization or individual in the event of a change in management of any of the residuary legatees. In fact, her intention was just the opposite. She did not specify that any particular trustees must be in charge of the Inasmuch Mission as a condition precedent to validity of the bequest. The objects of her bounty were the four corporations which have been doing the kind of work in Baltimore which she admired. The cardinal rule in the construction of wills is that the intention of the testator, which is to be ascertained from the will as a whole or from the will read in the light of the surrounding circumstances existing at the date of its execution, must be carried out unless prevented by some

imperative rule of law. *Maryland Casualty Co. v. Safe Deposit & Trust Co.* 115 Md. 339, 345, 80 A. 903, Ann. Cas. 1913 A. 1279; *Coudon v. Updegraf,* 117 Md. 71, 78, 83 A. 145; *Hutton v. Safe Deposit & Trust Co.,* 150 Md. 539, 554, 133 A. 308; *Jones v. Holloway,* 183 Md. 40, 36 A 2d 551, 152 A. L. R. 933.

Even if the mission corporation were adjudged to be dissolved, Grimes could incorporate his mission again. Under the Maryland chancery statute, amended by the Legislature in 1931, whenever any charitable or religious corporation is dissolved or about to be dissolved, or for any reason it is impracticable or inexpedient to continue the corporation activities, and all or any part of the corporate property is not needed for the payment of the corporate debts, a court of equity has power to determine the disposition of such property. In such case the court shall, so far as possible, direct or provide for the transfer of such property to any other corporation or association having a similar or analogous character or purpose, or in some way associated or connected with the corporation to which the property has previously belonged. It is the declared intention of the Legislature that courts of equity in such cases shall exercise the judicial power of *cy pres* in order to carry out the general purpose of the donor of the property in regard to the application and utilization of the gift in spite of the change of circumstances. Acts of 1931, Ch. 291, Code, 1939, Art. 16, Sec. 122.

The mission corporation has never been dissolved, but on the contrary is actively engaged in the benevolent work for which it was organized. Therefore, we conclude that the executor should distribute one-fourth of the residue of Mrs. Brown's estate to the corporation, to be administered by it in the manner designated by her as a memorial to her son.

*Decree reversed, and case remanded for the passage of a decree in accordance with this opinion, the costs to be paid out of the estate.*