**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 109

September Term, 2013

---

JOHN B. PARSONS HOME, LLC

v.

JOHN B. PARSONS FOUNDATION, ET AL.

---

Eyler, Deborah S.,
Berger,
Rodowsky, Lawrence F.
　　　(Retired, Specially Assigned),

JJ.*

---

Opinion by Berger, J.

---

Filed: April 30, 2014

* Judge Christopher B. Kehoe did not participate in
the Court's decision to report this opinion pursuant to
Md. Rule 8-605.1.

This case arises out of an order of the Circuit Court for Wicomico County granting summary judgment in favor of appellee, the John B. Parsons Foundation ("the Foundation"), against appellant, John B. Parsons Home, LLC ("JBPH"). This appeal requires us to determine the rightful beneficiary of a trust executed by Francis C. Baker in 1964 ("the Baker Trust"). The circuit court concluded that the Foundation is the rightful beneficiary to the Baker Trust and, therefore, granted the Foundation's request for declaratory judgment. Additionally, the circuit court dismissed the Foundation's trover and conversion claim, as well as its accounting claim.

Manufacturers and Traders Trust Company ("M&T") is the trustee of the Baker Trust.[1] On appeal, M&T contends that the rightful beneficiary of the Baker Trust is neither the Foundation nor JBPH. Rather, M&T argues that the rightful beneficiary is Harrison Enterprises ("Harrison"), the corporate parent of JBPH. Prior to awarding summary judgment to the Foundation, the circuit court denied Harrison's motion to intervene. M&T asserts error in the circuit court's failure to allow Harrison to intervene and further argues that the circuit court erred in dismissing M&T's claim of constructive fraud against JBPH.

On appeal, JBPH presents two issues for our review, which we rephrase and consolidate as one issue:

> 1. Whether the circuit court erred in concluding that the Foundation is the rightful beneficiary of the trust.

---

[1] The Foundation successfully obtained judgment against M&T on the Foundation's breach of trust claim against M&T.

Additionally, the Foundation cross-appeals and presents one issue[2] for our review:

1. Whether the circuit court erred in dismissing the Foundation's claim for trover and conversion.

M&T also cross-appeals and presents four issues for our review, which we rephrase and consolidate as follows:

1. Whether the circuit court erred in failing to require Harrison's intervention as an indispensable party.

2. Whether the circuit court erred in granting the Foundation summary judgment.

3. Whether the circuit court erred in dismissing M&T's constructive fraud claim against JBPH.

For the reasons that follow, we affirm the judgment of the Circuit Court for Wicomico County.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts of this case are not in dispute. On July 1, 1964, Francis C. Baker established a trust ("the Baker Trust"). The trust instrument ("the Deed") provides that, upon the death of certain named individuals ("the trigger event"), the trust will terminate, with the remaining proceeds distributed to three "named institutions, or [their] respective

---

[2] In addition to its cross-appeal, the Foundation moves to dismiss M&T's cross-appeal for allegedly failing to file a timely notice of appeal. We deny the Foundation's motion to dismiss M&T's cross-appeal for the reasons set forth more fully in Part III(A), *infra*.

successor[s]." Each of the three named institutions are charitable organizations.[3] One such institution is the "John B. Parsons – Salisbury Home for the Aged."

At the time the Baker Trust was executed, an entity known as the John B. Parsons – Salisbury Home for the Aged ("JBP Salisbury") owned and operated a residential and health care home for the elderly ("the Home"), located at 300 Lemmon Hill Lane, Salisbury, Maryland 21801.  The Home and the entity that owned the Home shared the name the "John B. Parsons – Salisbury Home for the Aged" at the time the Baker Trust was established.[4]

Due to economic considerations, JBP Salisbury subsequently solicited the financial and managerial support of J.P. Harrison, Incorporated ("J.P. Harrison"), a Pennsylvania corporation, to run the day-to-day operations of the Home.  In 1983, J.P. Harrison and JBP Salisbury executed a lease agreement for J.P. Harrison to manage and operate the Home for a period of five years.  Included in the lease agreement was an option agreement, which provided that, after five years, J.P. Harrison could purchase the Home from JBP Salisbury for a purchase price of $925,000.[5]

---

[3] The other two named institutions are the Peninsula General Hospital of Wicomico County and the Trinity United Methodist Church of Salisbury, Maryland.

[4] For clarity purposes, we shall refer to the elderly care facility located on Lemmon Hill Lane as "the Home"; we shall refer to the entity that previously owned the Home, and the Foundation's corporate predecessor, as JBP Salisbury.

[5] As part of the option agreement, JBP Salisbury agreed to finance the purchase of the Home and accepted a purchase money deed of trust from Harrison in the amount of $740,000.00.  All principal and interest payments are to be completed on or before January 2019.

Specifically, the option agreement provided:

> [JBP Salisbury] does hereby grant unto [J.P. Harrison Incorporated], its heirs or assigns, an option to purchase for the sum of Nine Hundred Twenty-Five Thousand Dollars ($925,000) *the real estate* more particularly described in "Exhibit A" . . . [a]lso included with the real estate and covered by this Option are the inventory, equipment, furnishings, fixtures, accounts receivable, contract rights and *any other personal or business assets located on the premises and/or regularly used by the John B. Parsons - Salisbury Home for the Aged*.

(Emphasis added).

On January 1, 1989, Harrison Enterprises ("Harrison"), on behalf of its corporate subsidiary, J.P. Harrison, exercised the option and JBP Salisbury, therefore, conveyed the Home to Harrison.[6] The articles of sale to the conveyance provide that:

> [JBP Salisbury] does hereby agree to sell, assign and transfer *all or substantially all of its property and assets* to [Harrison], its successors and assigns, *as hereinafter set forth*.

(Emphasis added). The confirmatory deed for the articles of sale provides that "the conveyance of the property *described herein* . . . constitutes *all or substantially all of* [JBP Salisbury's] remaining assets." (Emphasis added). The confirmatory deed further provides that JBP Salisbury conveyed "all those tracts or parcels of land situate[d] and lying in the Town of Wicomico County."

The January 1, 1989 bill of sale similarly provides that JBP Salisbury conveyed:

---

[6] Despite its sale of the Home, JBP Salisbury continued to provide and pay for the elderly with life care contracts with JBP Salisbury.

4

all that certain personal property, tangible and intangible , which now or has been located on or about the premises of the John B. Parsons Home on Lemmon Hill Lane in Salisbury, Maryland including, but not limited to, all furniture, furnishings, fittings, fixtures, shrubbery, walks, fences, equipment, machinery, appliances, accessories, supplies, apparatus, inventory, equipment, accounts, records pertaining to the said John B. Parsons Home, contract rights, choses in action, good will and any other tangible or intangible property now or formerly located on or associated with the said John B. Parsons Home, or which was intended to be conveyed pursuant to a certain Option Agreement . . . .

In 1992, as part of a corporate restructuring, JBP Salisbury changed its corporate name from JBP Salisbury to the John B. Parsons Foundation ("the Foundation"). Despite its sale of the Home, the Foundation continues to exist as a philanthropic and charitable non-profit organization. Among the continued philanthropic endeavors of the Foundation is the care for the elderly.

In 1995, approximately six years after its acquisition of the Home, J.P. Harrison was reorganized and converted to Salisbury Retirement Center, Inc. ("SRC"), which took over responsibility of the day-to-day operations of the Home. In 2003, the Harrison entities again restructured and reorganized. Included in the restructuring was the management of the Home, which was transferred from SRC to appellant, John B. Parsons Home, LLC ("JBPH").[7]

---

[7] Although Harrison owns the Home, JBPH operates and manages the Home. As mentioned, JBPH is a corporate subsidiary of Harrison.

In 2003, the first trigger event occurred and, accordingly, the Baker Trust trustee[8] began making distribution payments.[9] Between July 2003 and 2012, M&T, and its corporate predecessor, made payments to JBPH in the amount of approximately $117,190.84. No request or demand was made by JBPH for such payment and JBPH allegedly only learned of the Baker Trust's existence because of the distribution payments.

Upon learning of M&T's payments to JBPH, the Foundation demanded that M&T cease making payments to JBPH. The Foundation claimed that the Foundation, not JBPH, was the rightful beneficiary to the Baker Trust, and that M&T was erroneously making distribution payments to JBPH. M&T complied with the Foundation's request pending the outcome of the instant litigation.

On April 17, 2012, the Foundation filed a complaint in the Circuit Court for Wicomico County.[10] In its complaint, the Foundation sought declaratory relief that it was the rightful beneficiary to the Baker Trust and demanded an accounting of all monies, gifts, or bequests received by JBPH on behalf of JBP Salisbury since 1984. In addition, the

[8] The record reflects that M&T's corporate predecessor was the original trustee of the Baker Trust.

[9] The Baker Trust distribution payments were originally made to the now defunct entity SRC. The record reflects, however, that JBPH ultimately endorsed and received the funds. Accordingly, for purposes of this Opinion, we shall reference the distribution payments as being made to JBPH.

[10] The Foundation subsequently amended its complaint and filed the same on July 11, 2012. The amended complaint added a breach of trust claim against M&T, as well as a trover and conversion claim against the defunct entity SRC.

Foundation alleged trover and conversion claims against JBPH, as well as breach of trust against M&T due to M&T's allegedly improper distribution payments to JBPH.

During the course of litigation, Harrison moved for leave to intervene as a party defendant. In its motion, Harrison set forth the Harrison corporate structure and explained that Harrison, not J.P. Harrison, was the entity that acquired "all or substantially all" of JBP Salisbury's assets by virtue of the JBP Salisbury–J.P. Harrison conveyance. Harrison, however, only moved for *permissive* intervention, pursuant to Md. Rule 2-214(b) and (c).[11] The Foundation opposed Harrison's motion to intervene and argued that Harrison's interests were fully and adequately represented by JBPH because JBPH is the corporate subsidiary of Harrison. The Foundation further argued that permitting Harrison to intervene would cause unnecessary delay. On October 1, 2012, the circuit court denied Harrison's motion to intervene.

Subsequently, the parties filed competing cross-motions for summary judgment. On December 14, 2012, the circuit court held a hearing on all outstanding motions, including the cross-motions for summary judgment. During the hearing, the Foundation argued that there could be no corporate "successor" to JBP Salisbury because the JBP Salisbury corporate entity still exists today, albeit under a different corporate name, i.e., the Foundation. The Foundation argued that it only transferred the real and personal property associated with the Home, not its unknown beneficiary rights to the Baker Trust. The Foundation urged the

---

[11] Conversely, Maryland Rule 2-214(a) provides for intervention as a matter of right.

7

circuit court to undertake a careful reading of the applicable conveyance documents in assessing the rightful beneficiary of the Baker Trust.

On the other hand, JBPH asserted that it was the institutional "successor" to JBP Salisbury because of its ownership of the Home and because it acquired "all or substantially all" of JBP Salisbury's assets, including the beneficiary rights to the Baker Trust. JBPH argued it was the "institution" named in the Deed because the "institution" clearly referred to the Home itself, not whichever entity happened to own the Home. The circuit court held the matter *sub curia* in order to afford a careful reading of the applicable documents. In addition, at the conclusion of the hearing, the circuit court dismissed M&T's claim of constructive fraud against JBPH.[12]

Subsequently, on February 25, 2013, the circuit court issued a memorandum opinion granting the Foundation summary judgment on the Foundation's declaratory judgment action. In reaching its decision, the circuit court noted that it primarily relied on four documents: (1) the Francis C. Baker Trust dated July 1, 1964; (2) the option agreement between JBP Salisbury and J.P. Harrison dated December 29, 1983; (3) the articles of sale dated January 1,

---

[12] There is an apparent discrepancy in the record regarding the disposition of M&T's constructive fraud claim. The circuit court dismissed M&T's constructive fraud claim in an oral ruling on the record at the conclusion of the motions hearing. Subsequently, however, the circuit court denied M&T's cross motion for summary judgment on M&T's claim of constructive fraud in a memorandum opinion. Inasmuch as the circuit court granted JBPH's motion to dismiss at the hearing, we will analyze the issue in terms of its dismissal of M&T's constructive fraud claim. Indeed, the docket sheet reflects that M&T's claim was dismissed pursuant to the circuit judge's oral ruling.

1989; and (4) the bill of sale dated January 1, 1989. After reviewing the relevant documents, the circuit court concluded, *inter alia*, that the Foundation is the rightful beneficiary of the Baker Trust. The circuit court concluded that "the Option Agreement clearly intended to convey the option of purchasing real, personal and business property connected with the operation of the on-site nursing home, not the entire entity of 'John B. Parsons Home - Salisbury Home for the Aged.'"

Moreover, the circuit court found it "impossible to conclude that the entire entity [of JBP Salisbury] had been sold" and found that "the documents, [when] read carefully, make clear that [JBPH] is not the successor to [JBP Salisbury]." Instead, the circuit court concluded that JBP Salisbury "continued to exist after the sale of the [Home]," and found, ultimately, that "[t]he Foundation, as a matter of law, is the beneficiary of [the Baker Trust]."

The circuit court further determined that the alleged improper funds were intangible monies and, therefore, not subject to a conversion claim. The circuit court, therefore, dismissed the Foundation's claims alleging trover and conversion.[13] Additionally, the circuit court dismissed the Foundation's request for an accounting.

This timely appeal followed. We shall recite the relevant standard of review in the applicable sections of our "Discussion," *infra*.

---

[13] We note that the circuit court granted summary judgment to the Foundation on the Foundation's breach of trust claim against M&T. The circuit court found that M&T is liable because M&T "paid money to [JBPH], which was not a beneficiary of the [Baker] Trust."

## DISCUSSION

The central issue on appeal is whether the circuit court erred in determining the rightful beneficiary of the Baker Trust. JBPH asserts that it is the "successor" to JBP Salisbury because of its acquisition, ownership, and operation of the Home. JBPH further contends that it is the beneficiary because it allegedly acquired "all or substantially all" of JBP Salisbury's assets, including JBP Salisbury's unknown beneficiary rights to the Baker Trust. The Foundation, however, argues that we need not reach the question of whether JBPH is the "successor" because the Foundation is the same entity as JBP Salisbury, albeit under a different corporate name. The Foundation alleges that the applicable conveyance documents transferred only the real and personal property associated with the Home. The Foundation further maintains it continues in existence as a philanthropic non-profit organization that provides a multitude of philanthropic services, including the care for the elderly. As shall be discussed more fully *infra*, we agree with the Foundation and, therefore, affirm.

### I. Summary Judgment

#### A. Standard of Review

We review a circuit court's entry of summary judgment *de novo*. *Rodriguez v. Clarke*, 400 Md. 39, 70 (2007). "If no material facts are in dispute, we must determine whether summary judgment was correctly entered as a matter of law." *Id.* (quoting *Property and Casualty Insurance Guaranty Corp. v. Yanni*, 397 Md. 474, 480-81 (2007)).

10

We are "obliged to conduct an independent review of the record to determine if there is a dispute of material fact." *Injured Workers' Ins. Fund v. Orient Express Delivery Serv.*, 190 Md. App. 438, 450-51 (2010) (citing *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 714 (2007)). "A material fact is one that will alter the outcome of the case, depending upon how the fact-finder resolves the dispute." *Id.* at 451 (citing *Berringer v. Steele*, 133 Md. App. 442, 470-71 (2000) (citations omitted)). "Mere general allegations of conclusory assertions will not suffice." *Id.* (citing *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738 (1993)).

In *Catalyst Health Solutions, Inc. v. Magill*, 414 Md. 457, 471–72 (2010), the Court of Appeals explained:

> The standard of review for a declaratory judgment entered as a result of the grant of a motion for summary judgment is whether that declaration was correct as a matter of law. We have held that [w]hile it is permissible for trial courts to resolve matters of law by summary judgment in declaratory judgment actions, the court must, in a separate document and in writing, define the rights and obligations of the parties or the status of the thing in controversy. This requirement is applicable even if the action is not decided in favor of the party seeking the declaratory judgment.

(Citations and internal quotation marks omitted) (alteration in original).

**B.      The Rightful Beneficiary of the Baker Trust**

We begin our analysis with an evaluation of the plain language of the Deed to the Baker Trust. "[A]s a general rule, the construction or interpretation of all written instruments is a question of law for the court . . ." and, therefore, subject to a *de novo* review. *Olde*

11

*Severna Park Improvement Ass'n v. Gunby*, 402 Md. 317, 329 (2007) (citations omitted).

"In construing the language of a deed, the basic principles of contract interpretation apply." *Olde Severna Park Improvement Ass'n, Inc. v. Barry*, 188 Md. App. 582, 611 (2009) (citations omitted). "These principals require consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.'" *Chevy Chase Land Co. v. United States*, 355 Md. 110, 123 (1999) (quoting *Calomiris v. Woods*, 353 Md. 425, 436 (1999) (citation omitted)).

Ordinarily, "the court gives effect to the intention of the parties, gleaned from the text of the entire instrument, unless that would violate a principle of law." *Gunby v. Olde Severna Park Improvement Ass'n*, 174 Md. App. 189, 242 (2007) (citations omitted). "The intention of the grantor is a question of fact, and the surrounding circumstances . . . must be analyzed in order to truly understand an unexpressed intention." *Id.* (citation omitted). "The 'true test' of what was meant by the language of the deed is what a reasonable person in the position of the parties would have thought it meant." *Goss v. C.A.N. Wildlife Trust, Inc.*, 157 Md. App. 447, 459 (2004) (citations and internal quotation marks omitted).

"We construe a deed without resort to extrinsic evidence, if the deed is not ambiguous." *Id.* at 243. In "interpreting a deed whose language is clear and unambiguous on its face, the plain meaning of the words used shall govern without the assistance of extrinsic evidence." *Drolsum v. Horne*, 114 Md. App. 704, 709 (1997). We also consider the language of the deed "in light of the facts and circumstances of the transaction at issue

12

as well as the governing law at the time of conveyance." *Chevy Chase*, *supra*, 355 Md. at 123.

Turning to the instant case, JBPH asserts the straightforward proposition that, when it allegedly acquired "all or substantially all" of the Foundation's assets by virtue of the conveyance, JBPH became the rightful beneficiary of the Baker Trust. Specifically, JBPH alleges that it is the institutional "successor" to JBP Salisbury and, therefore, is the rightful beneficiary of the Baker Trust. The Foundation, however, argues that it only transferred the real and personal property associated with the Home. As such, the Foundation argues that it did not transfer its unknown beneficiary rights to the Baker Trust. Indeed, the Foundation is still the same entity, carrying on the same charitable activities, that existed at the time the Baker Trust was created. Therefore, according to the Foundation, there can be no corporate "successor."

As discussed *supra*, the Deed provides, in relevant part, that the trust shall be paid to the three "named *institutions*, or [their] respective *successor[s]*," including the "John B. Parsons-Salisbury Home for the Aged." (Emphasis added). Critically, the Foundation continues to operate under the same corporate entity as JBP Salisbury (albeit under a different corporate name), which is the same entity named in the Deed. Although the Foundation divested itself of its ownership rights in the Home (and the personal property associated with the Home), the Foundation did not relinquish or transfer its rights to the

13

unknown Baker Trust.[14]  Indeed, a careful evaluation of the documents associated with the JBP Salisbury–J.P. Harrison conveyance reflects that only the real and personal property associated with the Home was conveyed.

First, the articles of sale provide that JBP Salisbury conveyed "all or substantially all of its property and assets . . . *as hereinafter set forth*."  (Emphasis added).  The qualifying words "as hereinafter set forth," therefore, limit the conveyance to the property listed in the articles of sale.  Paragraph nine of the articles of sale specifies that the conveyance is for ". . . all of [JBP Salisbury's] interest *in land* in Wicomico County . . . ."  (Emphasis added).  Thus, the words of "as hereinafter set forth" clearly limit the conveyance to the real and personal property associated with the Home.

JBPH, however, argues that the language of the confirmatory deed to the articles of sale makes clear that "the conveyance of the property *described herein* by [JBP Salisbury] constitutes a conveyance of *all or substantially all* of [JBP Salisbury's] remaining assets."  (Emphasis added).  JBPH further alleges that neither the confirmatory deed nor the articles of sale "contain[] any words of limitation or restriction."  We disagree.  Critically, each of

---

[14] At oral argument, JBPH repeatedly asserted that JBP Salisbury did not retain *any* assets when it transferred the Home to Harrison.  The record, however, belies JBPH's contention.  Indeed, in its answers to interrogatories, the Foundation specifically indicated that, after the transfer of the Home, JBP Salisbury "*retained ownership of all of its financial assets, such as bank accounts, investment accounts, [and] rights as beneficiary under any trusts . . . .*"  (Emphasis added).  Despite JBPH's assertion to the contrary, the Foundation expressly noted that it retained financial assets and trust beneficiary rights.

these documents expressly contain words of limitation. Specifically, the confirmatory deed limits the conveyance to the "property *described herein*," namely, "all those tracts or parcels *of land* . . . in the Town of Wicomico County." (Emphasis added). As discussed above, the articles of sale limit the conveyance to the real property described "as hereinafter set forth," namely all of JBP Salibury's "interest in land in Wicomico County . . . ."

Moreover, the articles of sale clearly limit the transfer to the real property associated with the Home. Md. Code (1975, 2007 Repl. Vol.), § 3-115 of the Corporations and Associations Article ("C.A.") provides that:

> The assets of the transferor, including any legacies which it would have been capable of taking, transfer to, vest in, and devolve on the successor *to the extent provided in the articles without further act or deed*.

C.A. § 3-115(b)(1). (Emphasis added). Thus, pursuant to C.A. § 3-115(b)(1), we need only review the articles of sale to determine whether any "legacies," such as the Baker Trust, were transferred to JBPH. As discussed *supra*, however, the articles of sale provide only for the transfer of the real property associated with the Home, specifically, ". . . all of [JBP Salisbury's] interest *in land* in Wicomico County . . . ." (Emphasis added). Accordingly, pursuant to the articles of sale, JBP Salisbury did not convey its rights to the Baker Trust.

JBPH also makes much ado about the term "choses in action" contained in the bill of sale and claims that "choses in action" clearly contemplates trust beneficiary rights. BLACK'S LAW DICTIONARY defines a "chose in action" as: "1) A proprietary right *in personam*, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages

15

in tort; 2) The right to bring an action to recover a debt, money, or thing; or 3) Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit." BLACK'S LAW DICTIONARY (9th ed. 2009). We conclude that none of JBPH's proffered definitions of "choses in action" applies to unknown trust beneficiary rights such as the rights to the Baker Trust.[15] Indeed, the BLACK'S LAW DICTIONARY definition clearly includes an *in personam* right to bring a claim or action. Although a "chose in action" is certainly a property right, *see, e.g., Hoffman Chevrolet, Inc. v. Washington Cnty. Nat. Sav. Bank*, 297 Md. 691, 701 n.4 (1983), we hold that the beneficiary rights of the Baker Trust are not "choses in action."[16]

JBPH further relies on C.A. § 1-101 for the proposition that it is the corporate "successor" to JBP Salisbury and, therefore, entitled to the Baker Trust distributions. C.A. § 1-101(bb)(4) defines a corporate successor as, *inter alia*, a "vendee, lessee, or other transferee in a transfer of assets." A "transfer of assets" means "to sell, lease, exchange, or otherwise transfer all or substantially all of the assets of a corporation." C.A. §1-101(cc). As mentioned *supra*, however, JBP Salisbury did not transfer "all or substantially all" of its assets; rather, JBP Salisbury transferred "all or substantially all" of its assets specifically

_____

[15] JBPH claims that "choses in action" means "[u]nrealized rights under trusts, wills, and the like."

[16] Even if the beneficiary rights to the Baker Trust are a "chose in action"--which we do not believe to be the case--we are still be unable to circumvent the inescapable conclusion that the only property conveyed to JBPH was the real, personal, and business property associated with the Home itself.

16

relating to the real and personal property associated with the Home. Indeed, the Foundation's continued corporate existence belies JBPH's argument that it is the "successor" to JBP Salisbury. If JBP Salisbury had truly transferred *all* of its assets, it would not--and could not--continue to exist as a charitable organization.

Both parties rely on *The Wesley Home, Inc. v. Mercantile-Safe Deposit and Trust Co.*, 265 Md. 185 (1972). In *Wesley Home*, the Court of Appeals considered the proper beneficiary under a trust. *Id.* at 189-190. The trust provided that, upon termination of the trust, distribution payments were to be made to "The Anchorage of Baltimore City," ("the Anchorage") a charity that provided services and accommodations to merchant seamen staying in the city of Baltimore. *Id.* at 190-91. Subsequently, due to economic considerations, the Anchorage conveyed to the YMCA all of its assets "of every kind" including all assets "to which it may be entitled under any existing will already probated" and "any gifts, legacies or devises which may be given or left to [the Anchorage] by will or at any future time." *Id.* at 191. Despite its sale of all of its assets and operational services to the YMCA, the Anchorage never officially terminated as an organization. *Id.* at 193. Instead, the Anchorage continued to exist for the purpose of avoiding complications in any will or legacy payments. *Id.*

In 1955, following years of general decay of the Anchorage building, as well as the dwindling need for merchant seamen services, the branch ceased operations. *Id.* at 192. Subsequently, upon the happening of a trigger event, the trustee filed a complaint "seeking

17

a determination as to which of the various claimants were entitled to take and in what amounts." *Id.* at 190. The Court of Appeals ordered that the trust distributions be paid to the surviving corporate entity, the Anchorage, but the Anchorage was then directed to transmit the funds to the YMCA. *Id.* at 204. Critically, the Court concluded that the settlor's intent was to benefit merchant seamen, but that the settlor never "intended to require the Anchorage to maintain its [ownership of the premises], or to otherwise operate forever as it did at the time of [the settlor's] death." *Id.* The Court in *Wesley Home*, therefore, concluded that the Anchorage was the rightful beneficiary, but that its receipt of distribution payments should inure in favor of the YMCA. *Id.*

A critical distinction between *Wesley Home* and the instant case is that in *Wesley Home*, unlike here, the Anchorage transferred *all* of its assets, including its right to legacies and endowments. *Id.* at 191. Nevertheless, the Court *still* directed that the distribution payments be paid to the Anchorage first because of its ongoing corporate existence. *Id.* at 204. Indeed, the Anchorage continued to exist solely as a "skeletal" organization. *Id.* Nevertheless, the Court still concluded that the Anchorage was the rightful beneficiary. *Id.*

In the instant case, the Foundation continues to exist as a philanthropic non-profit organization that provides a multitude of philanthropic services, including the care for the elderly. Indeed, *Wesley Home* supports the Foundation's contentions and demonstrates that a surviving corporate entity is the rightful beneficiary when it is named in the trust instrument and carries on the same philanthropic objectives. The plain language of the Baker Trust

18

demonstrates that the purpose of the Trust was to benefit the elderly, a noble purpose still being carried out today by the Foundation. Indeed, the Foundation continues to carry on its original charitable purposes and one such purpose is the care for the elderly.

JBPH also cites the case of *Inasmuch Gospel Mission, Inc. v. Mercantile Trust Co. of Baltimore*, 184 Md. 231 (1945). In *Inasmuch Gospel*, the settlor devised certain beneficiary rights in a trust to Inasmuch Gospel Mission ("the mission"). *Id.* at 233-34. The trustee filed an action seeking a determination of the proper beneficiaries of the trust due to legal challenges from other beneficiaries. *Id.* at 234. Prior to the execution of the trust, however, the mission was adjudicated bankrupt. *Id.* at 236. The Court of Appeals observed that:

> It is also held that a bequest to a charitable institution does not lapse merely because there are some changes in the institution, as long as its general purposes are kept in view by those in control and the institution continues to function in its customary manner. The mere fact that a charitable or educational institution, to which a bequest has been given, is under a different ownership and management from that which the testator knew does not cause a forfeiture of the bequest, especially when the change in operation is for the purpose of insuring continued existence of the institution.

*Id.* at 239 (citations omitted). The Court further noted, however, that "[t]he mission corporation has never been dissolved, but on the contrary is actively engaged in the benevolent work for which it was organized." *Id.* at 240.

JBPH's reliance on *Inasmuch Gospel* is misplaced. Indeed, the Court there found the mission's continued existence as persuasive, especially the mission's continued existence

19

engaging in its "benevolent work." *Id.* Similarly, the Foundation here continues on in existence as a charitable organization and continues in its philanthropic objectives. As such, *Inasmuch Gospel* supports the Foundation's argument that it is the rightful beneficiary to the Baker Trust because of its continued existence carrying out its "benevolent work."

For all of the foregoing reasons, we affirm the circuit court's award of summary judgment to the Foundation.

## II. Trover and Conversion

In its cross-appeal, the Foundation claims that the circuit court erred in dismissing its claims alleging trover and conversion. We disagree.

In *Lasater v. Guttmann*, 194 Md. App. 431, 446-47 (2010), we described the two elements of conversion as follows:

> Conversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind. It is . . . any distinct act of ownership or dominion exerted by one person [i.e. the defendant] over the personal property of another [i.e. the plaintiff] in denial of his [or her] right or inconsistent with it. The act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor [i.e. the plaintiff] permits.

(Internal citation and quotation marks omitted).

"The general rule is that monies are intangible and, therefore, not subject to a claim for conversion." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 564 (1999) (citations omitted). "An exception exists, however, when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Id.* (citations omitted). Nonetheless, when funds

20

are co-mingled, the monies lose their "separateness" and, therefore, are not subject to a claim of conversion. *Lassater*, *supra*, 194 Md. App. at 447.

We agree with the circuit court's assessment that the Foundation failed to allege in its cross-claim that the distribution payments were ever "specific, segregated or identifiable funds." Further, there was no allegation in the cross-claim that the payments were not subsequently commingled by JBPH. Indeed, although the Foundation argues that this case was inappropriately dismissed due to the lack of specific allegations regarding whether the funds were commingled, a period of approximately nine years passed from the commencement of the distribution payments until 2012. As such, the circuit court did not err in concluding that the passage of nine years inevitably resulted in the commingling of the funds.

Assuming *arguendo* that the trial court was incorrect in concluding that the funds were commingled, and not subject to a claim of conversion, we conclude that reversal would nevertheless result in double recovery in favor of the Foundation.

We recognize:

> the general principle that a plaintiff is entitled to but one compensation for her loss and that satisfaction of her claim prevents further action against another for the same damages. This rule is equitable in nature and the purpose of the rule is to prevent double recovery and, thus, unjust enrichment.

*Underwood-Gary v. Mathews*, 366 Md. 660, 667 (2001) (internal citations omitted). Indeed, "double recovery for the same harm is not permissible." *Id.* at 669.

21

In the instant case, M&T was already adjudicated liable to the Foundation for breach of trust in the amount of $117,190.84, the same amount that M&T allegedly improperly distributed to JBPH. The circuit judge concluded that M&T "breached [its] fiduciary duty" by making payments to JBPH and, therefore, the Foundation is "entitled to have [M&T] restore the funds . . . as though the breach had not occurred." Clearly, if the Foundation prevailed in its trover and conversion claim against JBPH, the Foundation would recover damages for the same alleged harm as its breach of trust claim against M&T. Indeed, the $117,190.84 judgment represents the improper distribution payments made to JBPH. Any contrary determination would permit the Foundation double-recovery. We, therefore, affirm the circuit court's dismissal of the Foundation's trover and conversion claim.

### III.  M&T Claims

We now turn to the issues presented by M&T in its cross-appeal. We shall consider each of M&T's contentions in turn. We shall first, however, address the Foundation's pending motion to dismiss M&T's cross-appeal.

### A.    The Foundation's Motion to Dismiss M&T's Cross-Appeal

The Foundation moves to dismiss M&T's cross-appeal, pursuant to Maryland Rule 8-603(c). Specifically, the Foundation alleges that M&T failed to timely file its notice of appeal and failed to adequately demonstrate good cause to excuse its alleged noncompliance. The Foundation, therefore, maintains that we should dismiss M&T's cross-appeal as untimely.

Maryland Rule 8-202 sets forth the applicable timing provisions regarding notice of appeals. Md. Rule 8-202(a) provides, in relevant part:

> Except as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken.

Md. Rule 8-202(a). One exception to the rule, however, is embodied in Md. Rule 8-202(e), which provides that:

> If one party files a timely notice of appeal, any other party may file a notice of appeal within ten days after the date on which the first notice of appeal was filed or within any longer time otherwise allowed by this Rule.

Md. Rule 8-202(e).

Turning to the instant case, judgment was entered in favor of the Foundation on February 27, 2013. Accordingly, either JBPH or M&T had 30 days within which to file a notice of appeal. On March 27, 2013, JBPH timely filed its notice of appeal. Applying Md. Rule 8-202(e), M&T had ten (10) days from March 27 with which to file its notice of appeal. The record reflects that M&T filed its notice of appeal on April 4, 2013, well-within the 10-day filing requirement. As such, the Foundation's motion to dismiss is denied.

**B.     Intervention**

M&T's central claim in its cross-appeal is that the circuit court erred in denying Harrison's motion to intervene or, alternatively, that we must require Harrison's intervention as a necessary party. Specifically, M&T claims that "[u]nless and until [Harrison] is made a party to th[is] case, the circuit court did not and does not have jurisdiction to proceed

23

further in its consideration of the issues." M&T asks us to remand this case with an order requiring that Harrison be permitted to intervene and allowing for a determination on the competing motions for summary judgment with Harrison's participation. The Foundation and JBPH both argue that Harrison's rights are fully and adequately represented by JBPH. The Foundation further alleges that no party argued intervention as a matter of right in the proceedings before the circuit court and that, therefore, this argument is not preserved for our review.[17] In response, M&T maintains that intervention as a matter of right is a jurisdictional question and, therefore, may be raised at any time, including by us *sua sponte*.

Maryland Rule 8-131(a) provides that an appellate court normally will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court." *Univ. Sys. of Maryland v. Mooney*, 407 Md. 390, 400 (2009) (citing Maryland Rule 8-131(a)). The Court of Appeals has regularly stated that "the primary purpose of Rule 8–131(a) is to ensure fairness for all parties in a case and to promote the orderly administration of law." *Elliott v. State*, 417 Md. 413, 434 (2010) (quoting *State v. Bell*, 334 Md. 178, 189 (1994)).

Turning to this case, the record reflects that M&T never argued that Harrison should be permitted to intervene in the proceedings before the circuit court. In fact, no party objected to the circuit court's denial of Harrison's motion to intervene. Indeed, M&T cannot

---

[17] JBPH similarly argues that M&T failed to argue this issue below and, therefore, waived any right to appellate review.

now cry foul over the failure to include Harrison as an indispensable party when M&T failed to raise the issue below.

Assuming *arguendo* that we may *sua sponte* require Harrison's intervention as an indispensable party, as M&T alleges, we decline to exercise that discretion.[18]   Indeed, remanding this case for the sole purpose of including Harrison would result in unnecessarily protracted litigation, delay the administration of justice, and result in further costs. Critically, Harrison's interests are already fully and adequately represented by JBPH.  Harrison, therefore, is not an indispensable party and not entitled to intervene as a matter of right.

Specifically, Maryland Rule 2-214(a) governs intervention as a matter of right and provides that:

> Upon timely motion, a person shall be permitted to intervene in any action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest *unless it is adequately represented by existing parties.*

(Emphasis added).

---

[18] M&T cites the case of *United Slate & Tile & Composition Roofers v. United Brotherhood of Carpenters & Joiners*, 185 Md. 32 (1945), for the proposition that we are vested with the *sua sponte* authority to require intervention of an indispensable party.  Our reading of *United Slate*, however, supports only the unremarkable conclusion that when indispensable or necessary parties are not joined in an action, the court is vested with the authority to dismiss the action.  *Id.* at 37.

25

The four requirements that a party moving for intervention as of right must demonstrate are as follows: (i) the application for intervention must be timely; (ii) the applicant must have an interest in the subject matter of the action; (iii) the disposition of the action must at least potentially impair the applicant's ability to protect its interest; and (iv) *the applicant's interest must be inadequately represented by the existing parties.* *Chapman v. Kamara*, 356 Md. 426, 443 (1999) (emphasis added). "Failure to satisfy any one of the four requirements for intervention, as laid out above, is sufficient to warrant denial of a motion to intervene as of right." *Envtl. Integrity Project v. Mirant Ash Mgmt., LLC*, 197 Md. App. 179, 190 (2010).

Clearly, the fourth prong of the *Chapman* factors is fatal to M&T's argument. Indeed, a careful evaluation of the corporate structure of the Harrison entities demonstrates that Harrison is more than adequately represented by JBPH. Specifically, JBPH is the corporate subsidiary of Harrison and is responsible for the day-to-day operations of the Home. Although Harrison owns the Home and the real-estate associated with the Home, JBPH operates the day-to-day operations of the Home. Clearly, were JBPH to prevail in this case, the benefits of the Baker Trust would naturally flow to Harrison as the corporate parent of JBPH. Indeed, JBPH acknowledges in its brief that Harrison need not be a party to this proceeding because Harrison's rights are fully and adequately represented by JBPH.[19]

---

[19] We further question the propriety of M&T asserting appellate rights on behalf of Harrison when Harrison failed to appeal the denial of its motion seeking permissive

(continued...)

M&T further asserts that joinder of Harrison as a necessary party is mandatory pursuant to Md. Code (1974, 2013 Repl. Vol.), § 3-405 of the Courts & Judicial Proceedings Article ("CJP"). CJP § 3-405 provides that: "If declaratory relief is sought, a person *who has or claims any interest* which would be affected by the declaration, *shall be made a party*." § CJP 3-405(a) (emphasis added). The principal issue in this case is determining whether the Foundation was entitled to the Baker Trust distribution payments and whether M&T erred in making the payments directly to JBPH. As JBPH correctly observes, the circuit court was tasked with determining whether the Foundation carried its burden of persuasion in its declaratory judgment action. The circuit court was not tasked with determining which corporate entity within the Harrison corporate umbrella might be entitled to the Baker Trust distributions if JBPH were to prevail. Moreover, the disputed trust distributions were made to JBPH, not Harrison. Although Harrison owns the real estate within the Harrison corporate umbrella, JBPH is the entity responsible for the operation and management of the Home.

Ultimately, we hold that this issue is not properly preserved for our review and further conclude that, even if it were preserved for our review, Harrison's rights are fully and

---

[19] (...continued)
intervention. Even JBPH notes that Harrison is "prepared to espouse in full the submissions of JBPH" and is not asserting its own rights to be included in the litigation.

adequately represented by JBPH.[20]  Accordingly, the circuit court did not err in failing to require Harrison's intervention.

## C.    The Foundation Is Entitled to Summary Judgment

M&T next contends that the circuit court erred in awarding summary judgment to the Foundation.  M&T argues that there are sufficient disputes of material fact rendering summary judgment inappropriate. In an effort to allege disputes of material fact, M&T advances a bevy of hypothetical questions it considers unanswered disputes of material fact. JBPH argues that M&T failed to allege any disputes of material fact in the proceedings before the circuit court.  As such, JBPH argues that M&T's latent claim of disputed material facts is not preserved for our review.  We agree with JBPH.

At the dispositive motions hearing on December 14, 2012, all parties agreed that there were no material facts in dispute.  Indeed, prior to the hearing, M&T moved for summary judgment, thereby indicating that there were no disputes of material fact.[21]  Moreover, on appeal, both the Foundation and JBPH agree that there are no disputes of material fact and that this case is ripe for summary judgment purposes.  Because no disputes of material fact

---

[20] JBPH argues that including Harrison as a party may have facilitated a cleaner resolution of this case.  Nonetheless, simply because it may have been preferable to include Harrison as a party defendant does not mean that Harrison was an indispensable or necessary party.

[21] Assuming *arguendo* that this issue is somehow preserved, none of the proffered "disputes of material fact" are, in fact, material to the resolution of the claims in this case.

were advanced before the circuit court, we will not address M&T's claims without the benefit of the circuit court's assessment of the merits (or lack thereof) of those claims.

**D.      The Circuit Court Did Not Err in Dismissing M&T's Constructive Fraud Claim**

M&T's final contention of error is that the circuit court erred in dismissing its claim for affirmative relief against JBPH. In its cross-complaint, M&T alleged constructive fraud[22] against JBPH. Specifically, M&T alleges that JBPH instructed M&T to change the name of the payee of the trust distribution payments from "John B. Parsons – Salisbury Home for the Aged" to "Salisbury Retirement Center, Inc. T/A John B. Parsons Home." As such, M&T claims that JBPH fraudulently withheld information concerning the rightful beneficiary of the Baker Trust and/or deliberately misrepresented the same. JBPH, however, argues the circuit court correctly dismissed M&T's constructive fraud claim because M&T failed to plead with the requisite particularity needed to prevail on a motion to dismiss. We agree with JBPH.

"We review the grant of a motion to dismiss as a question of law." *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 334-35 (2009) (citations omitted). "In considering a dismissal, we inquire whether the well-pleaded allegations of fact contained in the complaint, taken as true, reveal any set of facts that would support the claim made." *Id.* (citations omitted). "A court must assume the truth of all well-pleaded relevant and material facts as

_____

[22] During the course of litigation, M&T occasionally sounded its cross-claim in terms of unjust enrichment.

well as all inferences that reasonably may be drawn therefrom, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action." *Id.* (citations omitted). "Any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Id.* (citations omitted). "Mere conclusory charges that are not factual allegations need not be considered." *Id.* (citations omitted). "Th[e] Court views all well-pleaded facts and the inferences from those facts in a light most favorable to the plaintiff, the non-moving party." *Id.* (citations omitted). We review only "the four corners of the complaint and its incorporated supporting exhibits, if any." *Forster v. Office of Pub. Defender*, 426 Md. 565, 604 (2012) (citation omitted). Ultimately, "[o]ur goal, in reviewing the trial court's grant of dismissal, is to determine whether the court was 'legally correct.'" *Parks v. Alpharma, Inc.*, 421 Md. 59, 72 (2011) (citations and internal quotations omitted).

We have previously explained that constructive fraud is:

> a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

*Scheve v. McPherson*, 44 Md. App. 398, 406 (1979) (citations and quotation marks omitted).

In the instant case, M&T's cross-claim complaint contains no more than conclusory allegations against JBPH. *See RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 644

(2010) ("The well-pleaded facts setting forth the cause of action must be pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice."). Moreover, M&T failed to specifically delineate *any* of the elements necessary to prevail in a case of constructive fraud. Critically, M&T did not even allege that JBPH owed M&T any duty, let alone how any duty was allegedly breached.[23] Clearly, there is an absence of any particularized facts necessary to withstand a motion to dismiss for failure to state a claim.[24]

In sum, we hold that the circuit court did not err in concluding that the Foundation is the rightful beneficiary of the Baker Trust. We further hold that the circuit court properly dismissed the Foundation's claims alleging trover and conversion. Finally, we hold that the

---

[23] The only reference to any duty JBPH may have owed M&T was contained in the last paragraph of M&T's cross-claim, which stated that JBPH "has breached its duty . . . by not making proper inquiry regarding these payments."

[24] Moreover, JBPH maintains that it is the entity that is entitled to receive the Baker Trust distribution payments. Indeed, JBPH requested that M&T change the name of the payee of the distribution payments from "John B. Parsons-Salisbury Home for the Aged" to "Salisbury Retirement Center, Inc. t/a John B. Parsons Home." This is consistent with the position JBPH took throughout the course of the dealings between the parties, i.e. that it was the rightful beneficiary of the Baker Trust. As such, the trial court did not err, as a matter of law, in dismissing M&T's constructive fraud claim against JBPH.

31

circuit court did not err in denying Harrison the right to intervene or in dismissing M&T's claim alleging constructive fraud against JBPH.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED. COSTS 25% BY APPELLANT; 25% BY APPELLEE/CROSS-APPELLANT JOHN B. PARSONS FOUNDATION; AND 50% BY APPELLEE/CROSS-APPELLANT MANUFACTURERS AND TRADERS TRUST COMPANY.**